## Bee's Old Reliable Shows, Inc. v. Maupin's Adm'x.

January 10, 1950.

838

George T. Ross and Andrew J. Ross for appellant.

Jas. S. Lackey, Thomas D. Shumate and G. Murray Smith, Jr., for appellee.

VAN SANT, COMMISSIONER—Affirming .

Appellant assigns nine alleged errors in support of its contention that the judgment awarding appellee, as administratrix de bonis non, $10,000 for the death of her son, Jack Maupin, should be reversed.

They are:

The Trial Court erred (1) in overruling appellant's motion for a peremptory instruction; (2) in overruling appellant's motion to set aside the swearing of the jury and continuing the case because of the improper conduct of one of the jurors; (3) in overruling appellant's motion to set aside the swearing of the jury and continue the case when it appeared in evidence that the deceased was a patron of a poolroom operated by one of the jurors; (4) in admitting incompetent evidence; (5) in overruling appellant's motion to quash and suppress incompetent evidence; (6) in overruling appellant's motion to set aside the swearing of the jury and continue the case because of incompetent questions propounded and improper statements made by counsel for appellee; (7) in not instructing the jury on the whole law of the case; (8) in failing to grant a new trial because the verdict is flagrantly against the evidence; and (9) in refusing to permit appellant to prove by the jurors that the verdict was arrived at by lot.

Appellant conducts a Carnival, and was thus engaged on the 15th day of May, 1947, in or near the city of Richmond. One of its instrumentalities of entertainment was a mechanical device known as a Tilt-a-Whirl, more commonly known as a Whip. It was composed of a large circular table mounted on wheels which ran on an undulating circular steel railway. The table was attached to a power device through the medium of a power pulley wheel which was set in motion by a belt attached to a 25 H. P. gasoline engine. The speed attained by the table traveling on its rails was controlled by a throttle attached to the gasoline engine and was released and stopped by the use of a clutch. Seven seats or tubs were attached to the platform by tongues extending from the front to spindles held in place by bolts. The back of the tubs rested on three wheels, which were mounted on another circular steel track, which was fastened to the platform floor. When the platform revolved, the seats were set in motion, sometimes traveling clockwise, at other times counterclockwise, in obedience to the laws of centrifugal force. A handle bar, set in sockets, was attached to the floor of the tub and provided a brace or handrail for the use of passengers. A stationary circular walk or platform was located six to eight feet distant from the revolving platform. Angle bars on the outer rim of the platform extended vertically a distance of approximately twelve feet and were connected with each other by one inch boards six or eight inches in width. These angle bars served as braces for the entire mechanical device.

On the night of May 15, 1947, decedent, his brother Lloyd Maupin, and William Brock purchased tickets and were accepted as passengers for a ride on the Whip. Evidence for appellee shows that within a short time appellant's agent in charge of operating the device released the clutch, and the platform and tubs commenced revolving on their respective axes; the mechanism attained a speed from fifty to one hundred per centum in excess of previous operations and customary speeds attained on similar devices; the seat in which appellee's decedent was riding appeared suddenly to have stopped and to have risen from its track, whereupon the deceased was thrown ten or twelve feet horizontally and approximately ten feet above the level of the revolving platform against one of the iron upright angle bars with

such force that his neck was broken and he instantly was killed. The angle bar, approximately 1½ inches in diameter, was bent by the impact. Decedent was occupying the outer seat of the tub and his companions were occupying the center and inner seats respectively. Both of the latter testified that they were almost thrown out of the tub at the time decedent was hurled from it. The operator of the device immediately stopped its movement, and employees of appellant refused to permit spectators to examine the device or its mechanism.

Appellant's testimony is to the effect that the decedent, of his own will and power, arose to a standing position in the seat, placing himself in an unsafe position; and, it appeared to them, that he jumped from the tub instead of being propelled from it. They additionally testified that the mechanism was in perfect working condition and was being operated at the usual rate of speed and that no similar accident ever had occurred. One witness for appellee testified that she smelled whiskey on the breath of the operator of the Whip. There is no evidence to support appellant's insinuation that the decedent was under the influence of intoxicating liquor at the time of the accident.

In support of the first contention, viz., that appellant was entitled to a directed verdict, it is argued that there was no allegation or proof that the injury or death of the decedent resulted from any breach of duty owed him by appellant. Appellee alleged in her petition that the negligent operation of the device was the proximate cause of her decedent's death. It certainly was the duty of appellant to use ordinary care in the operation of the device to prevent injury to its passengers. If, as witnesses for appellee testified, the device was being operated at a high rate of speed and suddenly stopped, and by reason of either excessive speed or sudden stopping the decedent was hurled from his seat, negligence in operation was manifest. In addition to that, the uncontradicted physical facts support appellee's theory of the cause of the accident. The point of impact with the angle bar was ten or twelve feet in horizontal, and ten feet in vertical, distance from the tub where decedent was riding. Decedent struck the bar with such force as to bend it and break his own neck. It is inconceivable that a person could jump for such distance,

both horizontally and vertically, and land with such force; whereas one readily can account for such force if the deceased was hurled from the tub being operated at an excessive speed. A secondary argument in support of the first contention is that appellee has five different theories as to how the accident occurred, and they are so contradictory of each other and so confusing as not to induce conviction. We do not gather that appellee has more than one theory of the case which is, as we have seen, that decedent's death was caused by the negligent operation of the Whip.

The contention in respect to improper conduct of one of the members of the jury is based on the showing that the juror, during adjournment for lunch, went to the table where the administratrix, her attorneys, and some of her friends were seated. The juror shook hands with appellee and engaged in a conversation with her and some of her friends. There is not even a suggestion that the case was discussed or that any improper statements were made by either the administratrix or the juror. In the absence of such a showing, we are inclined to believe that the conduct of the juror would not have justified the court in sustaining appellant's motion. It is claimed that the same juror made notes during the trial and that such conduct was prejudicial to appellant's rights. Nothing appears in the record supporting this contention except that appellant's attorney, during the progress of the trial, informed the court that he observed the juror taking notes. The court promptly offered to admonish the jury not to take notes but the attorney requested the court to refrain from such admonition. Under these circumstances we think the alleged misconduct of the juror has not been properly certified to us.

The basis of the third contention is not fully borne out by the evidence. It is true that it was shown that the decedent stopped at a poolroom operated by one of the jurors and remained there fifteen or twenty minutes before going to the Carnival on the night he was killed; but it was not shown that the decedent himself had ever been to the poolroom before or even knew the proprietor.

To recite the evidence objected to would unreason-

ably and unnecessarily extend the opinion. That directed to the establishment of the fact that the decedent's father was dead, and that his mother was employed at an ordnance depot was irrelevant but not prejudicial. The fact that the deceased had been a left gunner on a B-17 was competent for the purpose of showing that decedent was an able-bodied man, and that his experience in the Air Corps would have taught him the danger of standing up and jumping out of the Whip, which he did, according to the contention of appellant. The other testimony was directed to the speed at which the Whip was being operated at the time of the accident, and which was established by testimony of comparative speeds experienced by the witnesses on previous rides and similar devices. We believe the use of this character of testimony to be the only method of determining whether the device was being operated at an excessive speed, and the same character of testimony was offered by appellant to support its theory that the device was being operated at a proper and the usual speed. The evidence of one of the witnesses that she smelled "liquor on the breath of the man operating the machine" was competent and material. We conclude the court did not err to the prejudice of appellant's substantial rights in admitting any of the evidence complained of.

The question, answer, and statement of counsel strenuously objected to as the sixth ground for reversal was directed to the county coroner who is a doctor of medicine. He testified as to wounds and bruises produced on the decedent's body and that they caused his death. He was then asked if he examined "a boy by the name of Brock," who, it will be remembered, was one of decedent's companions at the time of the accident. The coroner answered this question in the affirmative and was then asked to call Brock's first name. When counsel for appellant objected, the court asked "What is the point about Brock?" Counsel for appellee then stated "Going to show that Brock was cut all to pieces, bruised him." At this point, counsel for appellant moved the court to set aside the swearing of the jury and continue the case "because of the conduct of plaintiff's counsel with reference to Brock." This motion was overruled. Later Brock testified that he was injured in the accident, but that answer was excluded

from the consideration of the jury. We think that counsel's reply to the query of the court was pertinent, although the language used appears to have been an exaggeration of the injuries sustained by Brock; and we think the court erred in not permitting both the coroner and Brock to describe the injuries sustained by the latter in the accident, since it was not contended that Brock left his seat of his own volition. If under those circumstances he was injured, such fact was corroborative of appellee's contention that the Whip was being operated in a negligent manner.

From what we have said, it is apparent that the verdict is not flagrantly against the evidence which leads us to the consideration of the contention that the court erred in its instructions to the jury.

The cause of action set out in the petition was based solely on negligent operation of the Tilt-a-Whirl or Whip. All of the testimony concerning negligence supports this theory and none other; nevertheless, the court did not instruct the jury on negligent operation but instructed on the negligence of appellant in failing to maintain the device in a reasonably safe condition to prevent injuries to persons using or riding it. Since there was neither pleading nor proof of this character of negligence, it was error for the court to instruct on it, and of course such error was vitally prejudicial to appellant's substantial rights.

Since the case must be reversed because of the error in the instructions, it is unnecessary for us to determine the complaint that the court erred in overruling appellant's motion to be permitted to introduce the jurors as witnesses in support of its motion for a new trial based on the ground that the verdict was arrived at by lot. It is not likely that this question will be presented on the next trial.

The judgment is reversed with directions that it be set aside and that appellant be granted a new trial to be conducted in conformity with this opinion.