19077

The STATE, Respondent, v. Ronald FLEMING and George Stanwood, Appellants.

(175 S. E. (2d) 624)

*Messrs. Law, Kirkland, Aaron & Alley,* of Columbia, and *Arthur Wilder,* of Sumter, *for Appellants,*

*Phillip K. Wingard, Esq., Solicitor,* of Lexington, *for Respondent,*

July 9, 1970.

Moss, Chief Justice:

Ronald Fleming and George Stanwood, the appellants herein, were tried upon an indictment charging them with the crime of rape, Section 16-71 of the Code. The case came on for trial before The Honorable George Bell Timmerman, Jr., Presiding Judge, and a jury, at the 1969 May Term of the Court of General Sessions for Lexington County. The jury found Ronald Fleming guilty of rape with a recommendation to mercy and he was sentenced to serve a term of thirty years in the State Penitentiary. George Stanwood was found guilty of an assault and battery of a high and aggravated nature and was sentenced to a term of ten years in the State Penitentiary.

At appropriate stages of the trial, the appellants made motions for a directed verdict on the ground that the evidence did not support a conviction of rape as to Fleming or assault and battery of a high and aggravated nature as to Stanwood. The appellants also made motions for judgment *non obstante veredicto*, or in the alternative, for a new trial upon grounds which will hereinafter be discussed. These motions were refused and this appeal followed.

It is the position of the appellants that the evidence offered in the trial of this case was insufficient to support the verdicts of the jury. This necessitates a brief recital from the testimony.

The prosecutrix is a 19 year old married woman. She is the wife of a member of the United States Army, and at the time of the happening here he was away from home and on duty at Fort Jackson, South Carolina. She testified that on October 6, 1968, she was on the way to her mobile home located near Jake's Landing in Lexington County. As she approached her home she saw the headlights of a car which she thought was approaching her and as she attempted to go around the car she struck an open door thereon, and five

or six men came up to her car, including the two appellants. The owner of the car, a Mr. Corley, introduced himself and he and the prosecutrix exchanged license numbers and addresses, she giving him her father's name and address because he owned the car she was driving. After this happening, the prosecutrix drove on to her mobile home and went to bed. Sometime later that night Stanwood came to her mobile home and requested that she accompany him on a visit to her father in order to straighten out the matter of insurance in connection with the collision. After some hesitation, she left her mobile home and got in the car with Stanwood, and shortly thereafter, as the car was being driven along the road, Fleming raised up in the back seat. Thereafter, the automobile in which she was riding pulled off the main road and into a wooded area. The car was stopped and the two appellants took a drink of whiskey and attempted to get the prosecutrix to join them, but she did not. She testified that she was sitting in the middle on the front seat and each of the appellants held one of her arms and completely disrobed her. She then realized what was happening and was placed in fear by such. She stated that she asked the appellants to let her out of the car and that she would walk home, but this they refused to do, and Stanwood told her to cooperate because he did not want to hurt her. She testified further that Fleming held her while Stanwood flipped a coin to see who would be first with her. According to her testimony Stanwood won the flip and they then put her in the back seat of the car and Stanwood got in the back seat and was undoing his trousers. She testified at that time she started praying and as a result Stanwood returned to the front seat, saying, "I can't; she's praying, and I can't do it." Following this Fleming got in the back seat and she struggled with him in an effort to avoid having sexual relations with him. She testified "He held my arms and raped me." She was asked, "When you make the statement that you were raped, was there any penetration?", to which the answer was, "Yes." She testified that she resisted the ad-

vances of the appellants and they used force in what they were doing to her. She said as a result of her experience she had bruises on her legs and arms. Thereafter, the two appellants permitted the prosecutrix to put on her clothing and she was driven to a point near her home and let out of the car. After she was let out of the automobile near her home, the prosecutrix went to a neighbor's house, rang the doorbell and woke them up. This neighbor testified that when she opened the door, the prosecutrix fell into her home and at such time was in an hysterical condition and unable to talk.

Stanwood testified that following the collision above referred to, he went to the home of the prosecutrix, his purpose being to tell her that he was responsible for her running into Corley's car and for her to take her car to a West Columbia garage and have it fixed. He testified that when he arrived at her home, the prosecutrix was upset, and he tried to comfort her by putting his arms around her, and invited her to go with him to get a sandwich. She went along without protest, but before arriving at the place where they were to get the sandwich, she decided that she had better get home before her husband arrived from Fort Jackson, and after finding an appropriate place, Stanwood turned the car around, shut off the motor, put his arms around the prosecutrix and kissed her and she kissed him back. At that time Stanwood testified that she said, "I will go with both of you," and such shocked him. The witness stated that the prosecutrix then took off her clothes of her own free will and got in the back seat and he climbed over the seat "to go with her." He testified that she said she was afraid of getting pregnant and because of such he did not have any sex relations with her. He said he then returned to the front seat.

Fleming testified that after Stanwood got back in the front seat, he got in the back seat and "started with her", admitting penetration of her genital organ by his but denying emission. He testified that all of this was with her consent.

In considering whether the court erred in not directing a verdict in favor of the appellants, we must view the testimony in the light most favorable to the State. When a motion for a directed verdict is made, the trial judge is concerned with the existence or nonexistence of evidence, not with its weight, and although he should not refuse to grant the motion where the evidence merely raises a suspicion that the accused is guilty, it is his duty to submit the case to the jury if there is evidence, either direct or circumstantial, which reasonably tends to prove the guilt of the accused or from which their guilt may be fairly and logically deduced. *State v. Rayfield,* 232 S. C. 230, 101 S. E. (2d) 505; *State v. Hyder,* 242 S. C. 372, 131 S. E. (2d) 96. A motion for a directed verdict of not guilty is properly refused where the determination of guilt is dependent upon the credibility of the witnesses. *State v. Marshall,* 250 S. C. 448, 158 S. E. (2d) 650, 651.

Viewing the testimony in the light of the foregoing rule, there is evidence that Fleming had carnal knowledge of the prosecutrix by force without her consent and against her will. In view of the admission of Fleming, the trial judge instructed the jury that in order to constitute the crime of rape there must be some degree of penetration of the female genital organ by the male genital organ, but any penetration, however slight, is all that is necessary and it was not necessary to prove emission. This charge accords with our holding in *State v. Worthy,* 239 S. C. 449, 123 S. E. (2d) 835. It was a question of fact for the jury to determine as to whether this took place without the consent of the prosecutrix and against her will.

There is evidence that Stanwood committed an assault and battery of a high and aggravated nature upon the person of the prosecutrix by taking indecent liberties and engaging in familiarities with her without her consent. The trial judge properly instructed the jury on this issue. *State v. Cunningham,* 253 S. C. 388, 171 S. E. (2d) 159.

We think that the testimony heretofore recited fully warranted the trial judge in refusing the motion of the appellants for a directed verdict and submitting the case to the jury.

After the jury had deliberated for sometime they returned to the courtroom and requested the trial judge to explain to them "what constitutes force." There was no exception by the appellants to the recharge so made. However, the following was stated in behalf of the appellants.

"I * * * would like to take exception to the taking out of context the matter of the charge as to what force is, when you have to emphasize any part of it. And I would feel that the entire charge as to the matter of what constitutes rape or assault with intent to ravish would have better covered it rather than to emphasize one special part of a particular charge".

* * * "And I feel that the entire charge on the matter of rape and what constitutes rape should have been given, rather than a specific portion of that which constitutes rape."

It is the position of the appellants that the trial judge should have repeated his entire charge as to what constitutes rape rather than recharging on the single element of force. This question is not preserved for consideration here by an appropriate exception, and in the absence of such there is nothing before us to decide. *Evans v. Bruce*, 245 S. C. 42, 138 S. E. (2d) 643.

The exceptions of the appellants charge the trial judge with error (1) in failing to give a proper definition of force and justifiable fear, and (2) in his definition of force and fear he commented on the facts. The foregoing questions were not presented to or passed upon by the trial judge. It is well settled that an issue which has not been presented to or passed upon by the trial judge will not be considered on appeal. *State v. Rutland*, 243 S. C. 176, 133 S. E. (2d) 126, 127.

Subsequent to the recharge and after the jury had retired, counsel for the appellants addressed the court and said:

"* * * I take exception to the matter of a member of the jury taking down parts of His Honor's charge by pencil and not taking down other parts, taking notes of that nature of His Honor's charge, in that taking a part of the charge and leaving out part of the charge could cause a confusion and take out of context certain words which would draw from it an inference which His Honor would not have meant from his entire charge."

The trial judge stated to counsel that he had no knowledge that a member of the jury was taking notes. Whereupon, it was stated by counsel that the foreman of the jury was jotting down certain notes while he was recharging the jury and "she would write for awhile and then she would stop for awhile, and several times, Your Honor, she waited awhile before her writing started. I really don't know what she wrote down because I couldn't see what she wrote. All I could do was see her writing."

The trial judge then asked counsel, "Do you want me to call her back and tell her you want to know what she was writing down?" * * * And, thereafter, he said, "What do you want me to do?" To which counsel for the appellants replied: "But for us to say, 'Bring out this girl,' no, sir, I wouldn't say it, not this week or next week, Your Honor."

The error assigned by the appellants, out of the note taking incident, is that the trial judge failed to admonish or instruct the jury to cease taking or using the notes of the judge's charge.

We have searched the record in this case and do not find that the appellants made any request of the trial judge that he admonish or instruct the jury concerning the taking or using notes of his charge. It was incumbent upon the appellants to request the trial judge to instruct the jury regarding taking and using of notes, if that was their desire. The failure to request instructions on this question

can only be regarded as a waiver of the right to such and acquiescence in the omission. *State v. Jamison,* 221 S. C. 312, 70 S. E. (2d) 342.

It is apparent from the record that the trial judge invited counsel to advise him what they wanted done about the note taking incident and they declined to make any suggestion as to the disposition he should make of the question.

In the case of *Bee's Old Reliable Shows v. Maupin's Admrx.,* 311 Ky. 837, 226 S. W. (2d) 23, the question of note taking was rightly refused consideration on appeal where attorneys for the appellants declined the lower court's offer to admonish the jury who were engaged in the taking of notes during the course of the trial. Such refusal was considered to constitute a waiver and, therefore, effectively disposed of the issue for purpose of review.

Attention is directed to the annotation on taking and use of trial notes by jury in 14 A. L. R. (3rd), 831. In such annotation our own case of *State v. Trent,* 234 S. C. 26, 106 S. E. (2d) 527, is discussed.

The exceptions of the appellants are found to be without merit. The judgment below is,

Affirmed.

LEWIS, BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.