19258

The STATE, Respondent, v. Robert James PITTS, Appellant.

(182 S. E. (2d) 738)

*Messrs. Charles H. Chiles,* and *James T. Irvin, Jr.,* of Rock Hill, *for Appellant,*

*Messrs. Daniel R. McLeod, Atty. Gen., Joel E. Gottlieb, Asst. Atty. Gen.,* of Columbia, and *Mike S. Jolly, Esq., Sol.,* of Union, for Respondent,

July 27, 1971.

Moss, Chief Justice:

Robert James Pitts, the appellant herein, along with Roy Albert Hinson and Clifford Jackson Hicks were indicted by the Grand Jury of York County at the 1970 February Term of Court of General Sessions, charging them in three separate indictments with the crimes of murder, armed robbery and burglary. Hinson entered a plea of guilty to armed robbery and was sentenced to serve a term of eighteen years. The record does not reveal what disposition was made of the *Hicks* case. At the 1970 April term of Court of General Sessions on motion of the appellant the separate charges

against him were consolidated for trial. At the close of all of the testimony the appellant made a motion for a directed verdict. This motion was refused and the case submitted to the jury and verdicts of guilty of murder with recommendation to the mercy of the court, of burglary and of armed robbery were returned. Prior to sentence, the appellant moved for a verdict of not guilty *non obstante veredicto,* or in the alternative for a new trial. All motions made by the appellant were overruled by the trial judge and this appeal followed.

The appellant asserts that the trial judge committed reversible error in refusing his motion to disqualify a juror upon the ground that she failed to disclose material facts on her *voir dire* examination.

It appears that the trial judge, pursuant to Sec. 38-202 of the Code, at the request of the appellant, propounded to each juror the question "Are you related by blood or marriage to any law officers connected with this case?" The juror, Ann Ervin, answered this question in the negative. Prior to the presentation of any evidence, but after the jury had been sworn, it was discovered that a brother-in-law of the juror was a deputy sheriff of York County. The appellant made a motion to disqualify Ann Ervin as a juror because of this relationship. The trial judge, out of the presence of the jury, conducted an examination of this deputy sheriff and the sheriff of York County. The examination of the sheriff revealed this deputy was not connected with the case against the appellant in any manner. The deputy sheriff testified that he did not know his sister-in-law was a member of the jury panel until he came into court on the day of the trial. He further stated that in the investigation and all that he knew about it was what he had read in the newspaper.

The trial judge found that the deputy sheriff was not connected with this case and hence the juror had answered the *voir dire* question truthfully. He further held that the fact that the juror was related by mar-

riage to a deputy sheriff not involved in this case furnished no basis for disqualifying the juror. We agree with the conclusion reached by the trial judge. See *State v. Cook,* 204 S. C. 295, 28 S. E. (2d) 842.

It is the position of the appellant that the trial judge was in error in refusing to direct a verdict of not guilty because the sole evidence of his guilt was the uncorroborated testimony of Roy Albert Hinson, an accomplice and co-defendant, whose testimony was contradicted by Mrs. Boyd and the attending physician of Mr. Boyd.

Roy Albert Hinson, who testified on behalf of the State, recited that he along with the appellant and Clifford Jackson Hicks departed from Charlotte, North Carolina during the evening of May 11, 1969 for the express purpose of burglarizing the home of Woodrow C. Boyd, such home being located in a rural section of York County approximately five miles South of the City of York, South Carolina. Hinson related that when they arrived at the Boyd home, which at the time was unoccupied, they immediately began making efforts to break in and had removed a window screen to this end. He stated that during the course of this break in, Boyd and his wife unexpectedly returned to the home. Hinson went on to testify that when the car entered the driveway he ran away from the house, only to become entangled in a barbed wire fence located at the rear of the Boyd lot. He said that while he was attempting to free himself from the fence he heard several pistol shots sounding as if they had come from the vicinity where Boyd had stopped his automobile, and upon freeing himself he proceeded to where he thought the pistol had been discharged. This witness stated that upon reaching the automobile he found the appellant with a pistol in his hand and saw that Boyd had been shot. He stated that he along with the appellant carried Boyd into the house and left him in the kitchen with Mrs. Boyd. Hinson further testified that the three of them, after Boyd was shot, robbed the bedroom

of certain monies, took Boyd's billfold and several hundred dollars from the trunk of the automobile. At the time of the shooting of Boyd and the robbery of his home, Hinson said he was wearing a stocking over his face and the other two were wearing ski masks. Hinson further testified that he did not see the actual shooting of Boyd but on the way back to Charlotte Pitts admitted that he had shot Boyd because Boyd resisted the robbery. Hinson also testified that on the day following the robbery the money taken from Boyd was divided between the three of them. The record shows that Woodrow Boyd died in the York General Hospital on May 17, 1969 as a result of the pistol wounds he had received.

The attending physician testified that Boyd described the man who shot him as being young and light skinned. Mrs. Boyd positively identified Hinson as one of the participants in the robbery and described the other two men who wore ski masks as short and thin. The record shows that the appellant was 56 years of age, six feet tall, weight approximately 205 pounds and had a generally ruddy complexion.

The appellant contends that the testimony of the attending physician and that of Mrs. Boyd did not identify him as to his physical appearance or characteristics and thus serves to contradict and impeach the testimony given by Hinson.

We have held in a number of cases that the weight to be given to a testimony of an accomplice is for the fact finding body and if the uncorroborated evidence satisfies the jury of the defendant's guilt beyond a reasonable doubt, a conviction is warranted. *State v. Harvey,* 253 S. C. 328, 170 S. E. (2d) 657. The weight to be attached to the testimony of an accomplice is for the jury alone who must consider it in view of the other evidence and reach their conclusion on the view of the whole case.

It is elementary in considering whether the trial judge erred in not directing a verdict of acquital in favor of the appellant that we must view the testi-

mony in the light most favorable to the State. When a motion for directed verdict of acquittal is made, the trial judge is concerned with the existence or non-existence of evidence, not with its weight, and although he should not refuse to grant the motion where the evidence merely raises a suspicion that the accused is guilty, it is his duty to submit the case to the jury if there is any evidence, direct or circumstantial, which reasonably tends to prove the guilt of the accused or from which his guilt may be fairly and logically deduced. *State v. Fleming,* 254 S. C. 415, 175 S. E. (2d) 624. A motion for a directed verdict of acquittal is properly refused where the determination of guilt is dependent upon the credibility of a witness, as this is a question that goes to the weight of evidence and is clearly for determination by a jury. *State v. Marshall,* 250 S. C. 448, 158 S. E. (2d) 650.

The jury, in assessing the reliability of that testimony bearing on the description of the ski masked robbers, could have understandably accorded little weight to such testimony, due to the strained circumstances under which the Boyds observed the robbers. The Boyd's ability to observe and remember, with any degree of accuracy, the physical appearance of the robbers, no doubt was greatly impaired by the fact that Boyd at the time had been fatally wounded and his wife was greatly concerned and giving her attention to his condition.

We conclude that there was no error in the part of the trial judge in refusing the motion of the appellant for a directed verdict.

The appellant asserts that the evidence on behalf of the State was insufficient to sustain his burglary conviction. This question is not preserved for consideration here by an appropriate exception and in the absence of such there is nothing before us to decide. *State v. Fleming,* 254 S. C. 415, 175 S. E. (2d) 624.

The appellant asserts that the trial judge committed reversible error in refusing to sustain his objection to argu-

ment by counsel for the State. The question of whether the argument by the solicitor was improper or prejudicial is, under our decisions, a matter addressed largely to the discretion of the trial judge, and his ruling will not be disturbed in the absence of a showing of an abuse of such discretion. *State v. Hutto,* 252 S. C. 36, 165 S. E. (2d) 72.

The record does not show the exact or objected to language used by the solicitor; however, the basis of the appellant's objection was that the solicitor, in his argument discredited the testimony of Mrs. Boyd in which she described certain physical characteristics of the appellant. When this objection was made, the trial judge admonished and charged the jury that in this case they were the judges of the facts and "if the facts are misstated by counsel in counsel's argument, you must decide whether it was or not and it is up to you to determine what the facts are and accept them as you think the truth came from the witness stand."

There is no contention that the solicitor made any argument upon facts not contained in the record. The solicitor had a perfect right to state his version of the testimony and to comment on the weight that should be given to such. If he did not state it correctly the jury knew it, for the jury is presumed to remember and know what testimony was given. *State v. Jernigan,* 156 S. C. 509, 153 S. E. 480.

The trial judge heard the argument of the solicitor and he was in a better position than we to pass upon its effect. In view of this and in the light of his instructions to the jury, we cannot say that his ruling with reference to the argument in question constituted an abuse of discretion. In refusing the motion of the appellant for a new trial on the grounds stated, the trial judge held that "counsel for the prosecution did not exceed permissible latitudes in his argument to the jury." We find no error on the part of the trial judge.

Finally, the appellant asserts that the trial judge erred in refusing to charge the jury that they could disregard the

sworn testimony of the witness Hinson upon the ground that he was an admitted agnostic.

Hinson was called as a witness for the State and after being duly sworn in the usual fashion gave his testimony. The appellant made no objection to the competency of Hinson as a witness. Subsequently, during the presentation of the appellant's evidence, certain records of the South Carolina State Hospital were introduced into evidence and read to the jury. A portion of these records consisted of reports made by the Chief of Psychiatry of the South Carolina State Hosiptal where Hinson had been sent under a court order for examination as to his sanity. In this report it was stated . that Hinson was sane but contained therein under "Circumstances Surrounding Admission" was the following statement "this 31 year old white, divorce agnostic gambler was admitted for psychiatric observation on a court order, charged with murder."

Prior to the introduction of this report into evidence counsel for the appellant asked that such be admitted as if it were the testimony of the psychiatrist, who, was not present as a witness. The State refused to so stipulate. The trial judge permitted the report to be introduced into evidence but ruled that such was not being allowed as though it were the testimony of the psychiatrist, thereby excluding the use of the report as evidence of the truth of the statements therein. The trial judge having ruled that the report was not admitted for its truth such was not competent to show that Hinson was an agnostic.

The appellant at no time objected to the competency of Hinson as a witness on the ground that he was an agnostic. In case of timely objection to the competency of a person offered as a witness, it is the duty of the court to make such examination as will satisfy it as to the competency or incompetency of the person to testify, and thereupon to rule on the objection accordingly. This question may not be referred to the jury and it is error to instruct the

jury that if they find a witness to be incompetent they are to disregard his testimony. 58 Am. Jur., Witnesses, Sections 211-212, pp. 144-145. In our own case of *City Council v. Haywood,* 2 Nott & McC. 308, it was held that the competency of a witness is for the court, and not the jury.

We think an apt statement of the applicable rule is set forth in *State v. Comstock,* 137 W. Va. 152, 70 S. E. (2d) 648, where it is said:

"The question of the competency of a witness is a question for the court, and not for the jury, and when a witness is offered in a criminal case, and doubt is raised as to the competency of such witness, it is the duty of the court to determine that question upon a careful examination of the witness as to age, capacity, and moral and legal accountability."

The appellant should have objected to the competency of Hinson as a witness before he was sworn. However if a witness is incompetent from any legal cause, he may be prevented from testifying, even after he has been called and sworn. If it was discovered that Hinson was incompetent as a witness after he had been sworn, the appellant should have made proper objection to his competency and had the court determine this question. If found to be incompetent, the appellant should have then made a motion to strike his testimony from the record. *State v. Summer,* 55 S. C. 32, 32 S. E. 771. In the light of this rule it is apparent that the competency of Hinson as a witness was not a question for the jury.

The appellant relies on the cases of *State v. Belton,* 24 S. C. 185 and *State v. Abercrombie,* 130 S. C. 358, 126 S. E. 142 as authority for the rule that atheists and agnostics are not competent witnesses. Even in these cases the question of the competency of a witness to testify was decided by the trial judge rather than by a jury.

It is our conclusion, for the reasons hereinbefore stated, that the trial judge committed no error in refusing the re-

quest of the appellant to charge the jury that they could disregard the sworn testimony of the witness Hinson upon the ground that he was an admitted agnostic.

The exceptions of the appellant are overruled and the judgment below is,

Affirmed.

LEWIS, BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.