# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

Jose Reyes Reyes, Petitioner.

Appellate Case No. 2019-001593

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Pickens County
Perry H. Gravely, Circuit Court Judge

---

Opinion No. 28004
Heard September 16, 2020 – Filed December 16, 2020

---

## AFFIRMED

---

Appellate Defender Kathrine Haggard Hudgins, of Columbia, for Petitioner.

Attorney General Alan McCrory Wilson and Senior Assistant Attorney General David A. Spencer, both of Columbia; and Solicitor William Walter Wilkins III, of Greenville, for Respondent.

---

**JUSTICE JAMES:** Jose Reyes Reyes was convicted by a jury of first-degree criminal sexual conduct with a minor. The court of appeals affirmed the conviction. *State v. Reyes*, Op. No. 2019-UP-214 (S.C. Ct. App. filed June 12, 2019). We granted Reyes's petition for a writ of certiorari. In this opinion, we address two questions: (1) did the trial court improperly rule in the jury's presence that the child victim (Minor) was competent to testify, and (2) did the solicitor improperly bolster Minor's credibility by phrasing questions to Minor in the first person? For the reasons explained below, we affirm the court of appeals.

## Background

In August 2013, Minor informed her aunt and mother that Reyes sexually abused her on multiple occasions when she was spending the night at the home of her mother's cousin. Investigators determined the alleged abuse took place between January and June 2013, when Minor was six years old.

Reyes was indicted for first-degree criminal sexual conduct with a minor. Minor was nine years old when the case was tried. Just before the State began its case-in-chief, the solicitor advised the trial court outside the presence of the jury that Minor would be the first prosecution witness. The trial court and the parties then engaged in the following colloquy:

> **Trial Court:** Do we need to go over anything with her before we -- outside the presence of the jury?
>
> **Solicitor:** Your Honor, I'll leave that in your discretion. I'm happy to go through kind of a series of the difference between the truth and a lie, but if you would like to do it prior to --
>
> **Trial Court:** [L]et's do it when the jury's here.
>
> . . . .
>
> **Trial Court:** Okay. Anything else from the defendant before we bring the jury in?
>
> **Defense:** No. Are you going to . . . try and go through the qualification of whether she's able to testify in the presence of the jury?
>
> **Trial Court:** That's what my intent was. Do you --

**Defense:**  I object.  That's just bolstering just like a forensic interview.

**Trial Court:**  Well, I mean, it's a little bit different because it's the difference in the truth and a lie on the stand.  I mean, I note your objection.

The jury entered the courtroom, and the State began its case-in-chief by calling Minor as a witness.  Before questioning Minor about the facts of the case, the solicitor asked Minor whether she understood the difference between the truth and a lie and asked related questions that allowed Minor to demonstrate her credibility.  Included in these preliminary questions was the following exchange:

**Solicitor:**  Okay.  Do you know that while you're here, *we* only talk about things that are the truth?

**Minor:**  Yeah.

**Defense:**  Your Honor, just for the record, I want to preserve my objection.

**Trial Court:**  All right.  As to the bolstering.  Yeah, I think that the person can testify on their own behalf, just not another party.

**Solicitor:**  Minor, do you know the difference between the truth and a lie?

**Minor:**  (Nods head.)

. . . .

**Solicitor:**  Okay.  So you understand that when *we're* in here, *we're* going to talk about the truth.  Do you understand that?

. . . .

**Minor:**  Yes.

**Solicitor:**  Okay.  Judge, at this time, I would move her as qualified to testify.

**Trial Court:**  Any -- any comments on -- I think, under Rule 601, [SCRE,] she is competent unless otherwise disqualified.

**Defense:**  No objection.

(emphases added).  The focus of this appeal is upon the trial court's final comment and the solicitor's use of the first-person "we" when questioning Minor.

Minor then testified that when she spent the night at the home of her mother's cousin and slept on the couch, Reyes would kiss her on the lips, touch the inside of her genital area with his hand, and touch the outside of her genital area with his penis.  The State presented no direct physical evidence of sexual abuse; however, the State introduced evidence that both Minor and Reyes tested positive for herpes simplex virus type 1 (HSV-1).

Reyes testified in his defense and denied Minor's allegations.  The jury convicted Reyes of first-degree criminal sexual conduct with a minor.  The court of appeals affirmed.  *State v. Reyes*, Op. No. 2019-UP-214 (S.C. Ct. App. filed June 12, 2019).  We granted Reyes's petition for a writ of certiorari to review the court of appeals' decision.

## Discussion

"The conduct of a criminal trial is left largely to the sound discretion of the trial judge, who will not be reversed in the absence of a prejudicial abuse of discretion."  *State v. Bryant*, 372 S.C. 305, 312, 642 S.E.2d 582, 586 (2007).  "An abuse of discretion occurs when a trial court's decision is unsupported by the evidence or controlled by an error of law."  *Id.*

Under South Carolina law, the competency of a witness is to be determined by the trial court, whereas the credibility of a witness is exclusively for the jury to decide.  *State v. Pitts*, 256 S.C. 420, 430, 182 S.E.2d 738, 743 (1971); *Tappeiner v. State*, 416 S.C. 239, 250, 785 S.E.2d 471, 476 (2016) (quoting *State v. McKerley*, 397 S.C. 461, 464, 725 S.E.2d 139, 141 (Ct. App. 2012)).  It is improper for a judge or a prosecutor to bolster a witness's credibility by stating to the jury his or her view that the witness is likely being truthful.  *See Tappeiner*, 416 S.C. at 250, 785 S.E.2d at 477; *State v. Hardee*, 279 S.C. 409, 414, 308 S.E.2d 521, 525 (1983).

## A. Minor's Testimony

Reyes contends the solicitor's above-quoted line of questioning and the trial court's comment that Minor was competent unless otherwise disqualified amounted to a witness competency hearing the trial court erroneously conducted in the presence of the jury. Reyes argues Rule 104, SCRE,[1] required the trial court to hold an in camera witness competency hearing; particularly, he argues the rule requires in camera competency hearings in order to prevent improper vouching and bolstering of the subject witness's credibility.

First, we question whether the colloquy amounted to a witness competency hearing. Under Rule 601(a), SCRE, "[e]very person is competent to be a witness except as otherwise provided by statute or these rules." Accordingly, a witness is presumed competent and the party opposing the witness's competency has the burden of proving the witness is incompetent. *State v. Needs*, 333 S.C. 134, 142-43, 508 S.E.2d 857, 861 (1998), *holding modified on other grounds by State v. Cherry*, 361 S.C. 588, 606 S.E.2d 475 (2004); *see Pitts*, 256 S.C. at 429, 182 S.E.2d at 743 ("In case of timely objection to the competency of a person offered as a witness, it is the duty of the court to make such examination as will satisfy it as to the competency or incompetency of the person to testify, and thereupon to rule on the objection accordingly."). Here, defense counsel did not challenge Minor's competency, and the trial court did not ask any questions of Minor to gauge her competency. When a trial court conducts a true competency hearing, the better practice is to hold the hearing outside the jury's presence.[2]

---

[1] "Preliminary questions concerning the qualification of a person to be a witness . . . shall be determined by the court[.]" Rule 104(a), SCRE. "Hearings on the admissibility of confessions or statements by an accused, and pretrial identifications of an accused shall in all cases be conducted out of the hearing of the jury. Hearings on other preliminary matters shall be so conducted when the *interests of justice require*, or when an accused is a witness and so requests." Rule 104(c), SCRE (emphasis added).

[2] We agree with the majority of jurisdictions that have addressed this issue, and believe—while the failure to do so is not automatic reversible error—competency hearings should be conducted in camera to prevent any improper influence on the jury's credibility determination. *See, e.g.*, *Ex parte Brown*, 74 So. 3d 1039, 1044–45 (Ala. 2011) (explaining, although the better practice is for the trial court to excuse

However, our resolution of this appeal does not depend upon whether the colloquy was or was not a competency hearing. Instead, we focus upon the propriety of the jury being present when the trial court stated that under Rule 601, "[Minor] is competent unless otherwise disqualified," and we focus upon the propriety of the solicitor's use of the first-person "we" and "we're" in the presence of the jury.

### 1. The Trial Court's Comment

Reyes argues the trial court vouched for Minor's credibility when it stated in the presence of the jury that Minor was competent to testify unless she was otherwise disqualified. Reyes contends because the trial court failed to instruct the jury about the difference between competency and credibility, the jury could have concluded the trial court thought Minor was credible.

Accordingly, we must decide whether a reasonable juror would consider the trial court's statement that Minor was competent as an indication the trial court believed Minor was credible. A common function of the trial court is to make rulings on evidence, and typically there is no error where the trial judge does so in a neutral manner in the jury's presence. *See State v. Chasteen*, 228 S.C. 88, 98, 88 S.E.2d 880, 885 (1955), *overruled on other grounds by State v. Torrence*, 305 S.C. 45, 406 S.E.2d 315 (1991) (holding, before the adoption of Rule 104, SCRE, no prejudicial error resulted from the trial court ruling in the presence of the jury that the defendant's confessions were admissible because the trial court "announced [its] decision in a most formal way without any intimation as to the weight of the evidence").

In the instant case, the trial court made the comment about Minor's competency in conjunction with a formal reference to Rule 601(a) before Minor gave any factual testimony. Under these circumstances, we hold a reasonable juror could not have considered the trial court's comment as an indication the trial court believed Minor was credible.

---

the jury, a defendant must show prejudice to establish reversible error); *State v. Fleming*, 792 N.W.2d 147, 156 (Neb. 2010) (same); *State v. Cook*, 485 So. 2d 606, 609 (La. Ct. App. 1986) (same).

## 2. The Solicitor's Questioning

As noted in the above-quoted exchange, the solicitor told the trial court she planned to "go through kind of a series of the difference between the truth and a lie [with Minor]." Although this general line of questioning is often employed by a trial court or counsel during a witness competency hearing, it is also a useful and proper line of questioning to enable a jury to evaluate a child witness's credibility. *See Commonwealth v. Hutchinson*, 25 A.3d 277, 290-91 (Pa. 2011) ("[S]ome 'foundational [competency] questioning' might be duplicated during the trial proceedings. Such duplication arises from the fact that evidence relevant to the foundational requirement of competency is also relevant, in many instances, to the weight and credibility accorded to a witness's testimony."); *see also* 3 *Weinstein's Federal Evidence* § 601.02(1) (2d ed. 2020) (recognizing Federal Rule of Evidence Rule 601—which Rule 601, SCRE, tracks—as the "culmination of the trend that has converted questions of competency into questions of credibility").

Credibility is a determination for the jury. *Tappeiner*, 416 S.C. at 250, 785 S.E.2d at 476. Here, the solicitor's general line of questioning as to whether Minor knew the difference between the truth and a lie and as to whether she intended to tell the truth did not impermissibly vouch for or bolster Minor's credibility. *See State v. Shuler*, 344 S.C. 604, 630-31, 545 S.E.2d 805, 818-19 (2001) (holding the solicitor's in-court questions that asked the witness "if he was telling the truth[,] did nothing more than reference what [the witness] agreed to do when he was sworn by the clerk before testifying" and did not result in the solicitor improperly vouching for or bolstering the witness's testimony).

However, the trial court erred in allowing the solicitor to phrase two of her questions in the first person. Reyes argues this phrasing improperly bolstered Minor's credibility because it signaled to the jury the solicitor believed Minor was testifying truthfully. We agree the questions were improper.

In *State v. Kelly*,[3] we held the solicitor impermissibly bolstered the credibility of the State's witness—a jailhouse informant—during the sentencing phase of a capital murder trial by asking the following questions of the witness: "What did *I* tell you *that I absolutely required* regarding your testimony to this jury today?" and "Did

---

[3] 343 S.C. 350, 540 S.E.2d 851 (2001), *rev'd and remanded on other grounds by Kelly v. South Carolina*, 534 U.S. 246 (2002).

*I* tell you to tell the truth to this jury?" *Id.* at 369 & n.12, 540 S.E.2d at 860-61 & n.12. (emphases added by the *Kelly* Court). We explained that because the solicitor phrased his questions in the first person, the jury could have perceived the solicitor believed the witness was testifying truthfully—a belief that carried with it the imprimatur of the government, which may have induced the jury to trust the State's judgment about the witness. *Id.* at 369 & n.12, 540 S.E.2d at 860-61 & n.12. Therefore, we held the trial court erred in overruling the defendant's objection to the solicitor's questions, but concluded the error was harmless because the witness's credibility was impeached on cross-examination and there was overwhelming evidence of an aggravating circumstance to warrant the jury's death sentence recommendation. *Id.* at 369-70, 540 S.E.2d at 861.

The State argues the present case is distinguishable from *Kelly*. The State contends the "harmful aspect" of the solicitor's questions in *Kelly* was the solicitor's references to the solicitor's pre-trial conversations with the witness, which suggested the solicitor believed the witness was credible. We disagree with the State. The *Kelly* Court explained the "harmful aspect"—to borrow the State's phrasing—of the solicitor's questions was his first-person manner of questioning, which could have given the jury the perception that he believed the witness was telling the truth. *Id.* at 369 & n.12, 540 S.E.2d at 860-61 & n.12. Though the State may be correct that the solicitor in *Kelly* compounded the error and resulting prejudice by improperly referencing pre-trial conversations he had with the witness, the *Kelly* Court made no mention of the solicitor's references to these pre-trial conversations as a basis for holding the solicitor's first-person questions improperly bolstered the witness's credibility. *See Shuler*, 344 S.C. at 630, 545 S.E.2d at 818 ("In *Kelly*, this Court found an assistant solicitor improperly bolstered a witness' credibility through improper questioning. While the assistant solicitor in *Kelly* did not assert he had personal knowledge his witness was testifying truthfully, *he improperly phrased his questions in the first person*." (emphasis added)).

Here, the solicitor used the first-person pronoun "we" when questioning Minor about telling the truth. While the first-person questions in this case were not as egregious as the questions asked in *Kelly*, the questions in this case were improper.

## B. Harmless Error

Although the trial court erred in allowing the solicitor to question Minor using the first-person "we," we hold the error was harmless beyond a reasonable doubt.

Some errors—when considered in the context of the facts of a particular case—are so insignificant and inconsequential they do not require reversal of a conviction. *See Chapman v. California*, 386 U.S. 18, 22 (1967). It is well-established:

> Whether an error is harmless depends on the circumstances of the particular case. No definite rule of law governs this finding; rather, the materiality and prejudicial character of the error must be determined from its relationship to the entire case. Error is harmless when it "could not reasonably have affected the result of the trial."

*State v. Mitchell*, 286 S.C. 572, 573, 336 S.E.2d 150, 151 (1985) (quoting *State v. Key*, 256 S.C. 90, 93, 180 S.E.2d 888, 890 (1971)). "[O]ur jurisprudence requires us not to question whether the State proved its case beyond a reasonable doubt, but whether beyond a reasonable doubt the trial error did not contribute to the guilty verdict." *State v. Tapp*, 398 S.C. 376, 389-90, 728 S.E.2d 468, 475 (2012). Put simply, the harmless error rule embodies a commonsense principle our appellate courts have long recognized—"whatever doesn't make any difference, doesn't matter." *State v. Jolly*, 304 S.C. 34, 39, 402 S.E.2d 895, 898 (Ct. App. 1991) (quoting *McCall v. Finley*, 294 S.C. 1, 4, 362 S.E.2d 26, 28 (Ct. App. 1987)).

In determining whether error is harmless beyond a reasonable doubt, we often look to whether the "defendant's guilt has been conclusively proven . . . such that no other rational conclusion can be reached." *State v. Collins*, 409 S.C. 524, 538, 763 S.E.2d 22, 29-30 (2014) (quoting *State v. Bryant*, 369 S.C. 511, 518, 633 S.E.2d 152, 156 (2006)). Thus, "overwhelming evidence" of a defendant's guilt is a relevant consideration in the harmless error analysis. *See State v. Kromah*, 401 S.C. 340, 361-62, 737 S.E.2d 490, 501 (2013).

The State argues any error committed by the trial court was harmless in light of the overwhelming evidence of Reyes's guilt. According to the State, the overwhelming evidence of guilt consists of Minor's testimony, Minor's disclosure of abuse to her mother and aunt, and the fact that both Minor and Reyes tested positive for HSV-1. The State contends its theory of the case—that Reyes sexually abused Minor—presented "the only logical chain of events" to explain how Minor contracted HSV-1 in her genital area. Under the facts of this case, we disagree.

The State's expert witness in child abuse pediatrics, Dr. Mary-Fran Crosswell, provided conflicting explanations for how Minor might have contracted HSV-1 in her genital area. Dr. Crosswell explained Minor could have contracted genital herpes if another person with HSV-1 touched her genital area. Dr. Crosswell also testified Minor reportedly suffered from cold sores around her mouth about two years prior to the alleged sexual abuse. Dr. Crosswell testified the cold sores were most likely caused by HSV-1, and she stated she would have expected the virus to reappear around Minor's mouth instead of her genital area. However, Dr. Crosswell acknowledged the possibility the virus was transmitted to Minor's genital area by Minor's own hand after Minor touched her mouth, where the virus may have been dormant. On recross-examination, Dr. Crosswell testified she could not say Minor's contraction of genital HSV-1 was any more likely caused by Minor touching her own genital area after touching her mouth than by someone else touching her genital area.

Given Dr. Crosswell's equivocal explanations for Minor's genital HSV-1 diagnosis and the absence of physical evidence of abuse, we cannot conclude there was overwhelming evidence of Reyes's guilt. Nonetheless, we conclude the trial court's error was harmless beyond a reasonable doubt in light of the trial court's jury charge, which cured any prejudice Reyes suffered as a result of the solicitor's fleeting first-person questions. After closing arguments, the trial court charged the jury:

> [Y]ou're the sole exclusive judge of the facts of this case. As a judge I cannot intimate, I cannot infer anything about the facts of this case because that's totally your province as a jury to decide what the facts are. If anything I've done or anything I've said made you think that I have an opinion on those facts, [I'm going to] ask you to disregard that because that would be invading your province and you're the ones that determine what the facts are of this case.
>
> . . . .
>
> In making your determination in . . . determining what the facts are, you have to determine the credibility of witnesses who've testified in the case and credibility mainly -- merely means believability, it . . . becomes your duty as a jury to analyze and to evaluate the evidence and determine which evidence convinces you of its truth.

In determining the believability of witnesses who've testified, you may believe one witness over several witnesses or several witnesses over one witness, you may believe part of a witness's testimony, disregard . . . the remaining part or you may disregard the testimony [in] its entirety or accept[] it[] in its entirety, that's totally up to you to determine . . . [what] weight should be considered and when you consider . . . whether a witness has exhibited [ ] any interest, bias, prejudice or other motive in the case that's to be considered by you, you may also consider the appearance of the witnesses while they're on the stand.

. . . .

Now [in] this case we've had testimony . . . of a child . . . and where [the] witness is a child you must determine as with any other witnesses whether that testimony is believable. In deciding believability you may consider not only matters that I have already discussed with you but you may also consider the age of the child, the child's ability to observe and remember facts and the child's ability [to] understand and answer questions because young children may not fully understand what is happening here, it's up to you to decide whether the child or children understood the seriousness of appearing as a witness at this criminal trial, whether the child . . . understood the questions, whether the child has a good memory and whether [the] child understands the difference between lying and telling the truth; in addition, young children may be influenced by the way questions are asked, it [is] up to you as the jury to decide whether [the] child understood the questions asked.

Any bolstering of Minor's credibility resulting from the solicitor's first-person questions was cured by the last paragraph of this charge. The credibility charge as a whole explained to the jury that it was the sole arbiter of witness credibility. Crucially, the final paragraph of the credibility charge instructed the jury to assess the credibility of a child witness through a more suspect lens, thus removing any improper influence that arose from the solicitor's questioning.[4] Jurors are presumed

---

[4] The State did not object to the portion of the charge instructing the jury to assess a child's testimony through a more suspect lens. It is proper for a party to make such an argument to the jury, but it is not proper for a trial court to include such language in its charge to the jury. Here, however, the charge prejudiced the State, not Reyes.

to follow the law as instructed to them. *State v. Grovenstein*, 335 S.C. 347, 353, 517 S.E.2d 216, 219 (1999).

In light of the attendant circumstances, we conclude the solicitor's first-person questions did not contribute to the jury's verdict. Therefore, we hold the trial court's error in permitting these questions was harmless beyond a reasonable doubt.

## Conclusion

For the foregoing reasons, we affirm the court of appeals.

**AFFIRMED.**

**KITTREDGE and FEW, JJ., concur. HEARN, J., dissenting in a separate opinion in which BEATTY, C.J., concurs.**

**JUSTICE HEARN:** While I agree with certain aspects of the majority opinion, I dissent because I believe the trial judge's decision to hold a competency hearing for Minor in the presence of the jury was error which was compounded by the assistant solicitor's improper questioning of the child. Further, I agree with the majority that there was no overwhelming evidence of Appellant's guilt in this case, but I do not believe the trial judge's arguably faulty instructions alleviated the prejudice to Appellant; thus, I cannot find the errors harmless.

At the outset, I take issue with the majority's suggestion that the judge did not conduct a competency hearing. The majority appears to base this determination on what was missing from this hearing—such as an initial objection from Appellant as to Minor's competency and certain technical aspects of a usual competency hearing—rather than on what was included in the colloquy. The majority is entirely correct that there was no need for any questioning on the issue of competency because there was no objection from Appellant to trigger a competency hearing. Moreover, under Rule 601, SCRE, every person is presumed competent to be a witness. Nevertheless, over Appellant's objection, the assistant solicitor proceeded with competency questioning, presumably because a child witness was involved.

The State called Minor, who was nine years old at the time of trial, as its first witness, and began by inquiring about her understanding of telling the truth. For example, counsel for the State asked: "Do you know that while you're here, *we* only talk about things that are the truth?" (emphasis added). Towards the end of her colloquy on competency, the assistant solicitor asked: "So you understand that when *we're* in here, *we're* going to talk about the truth. Do you understand that?" (emphasis added). Quite clearly, this questioning, which spanned approximately four pages in the record on appeal, specifically addressed Minor's competency to testify. Thus, contrary to the majority's position, this was indeed a competency hearing.

The assistant solicitor's questioning in the first person is a tactic which has been expressly disapproved by this Court. *State v. Kelly*, 343 S.C. 350, 369 & n.12, 540 S.E.2d 851, 860-61 & n.12 (2001) (noting that although the assistant solicitor did not comment he had personal knowledge of the witness's truthfulness, he improperly phrased his questions in the first person), *rev'd and remanded on other grounds by Kelly v. South Carolina*, 534 U.S. 246 (2002). This improper questioning was error which exacerbated the error made by the trial judge in ruling in the presence of the jury that he found Minor to be competent. I acknowledge the correctness of the majority's assertion that in doing so, the trial judge was merely

stating the law as reflected in Rule 601, SCRE; however, I disagree with the majority that this statement was properly made before the jury.[5]

The majority further contends a reasonable juror would not have believed the judge was indicating Minor to be truthful when he found her competent to testify. I disagree and believe that from the standpoint of the jury—composed of laypersons—this declaration most likely conveyed the impression that the judge believed Minor was telling the truth. As the Pennsylvania Supreme Court has recognized: "The invariable result of a jury's presence during competency proceedings is that the truth determining process exclusively reserved for the jury is influenced by the inquiry into competency." *Commonwealth v. Washington,* 722 A.2d 643, 646 (Pa. 1998). Likewise, when the jury observed the dialogue between Minor and the assistant solicitor regarding the importance of truth-telling and thereafter heard the trial judge state that he found Minor competent, it is inevitable the jurors believed the judge found Minor to be telling the truth.[6]

---

[5] There are many accurate statements of the law that a trial judge should not mention to the jury, and in my view—due to of the very real possibility of improperly bolstering the testimony of the prosecution's witness—a statement finding a child witness competent is one of them. *See, e.g.,* Rule 411, SCRE: "Evidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully." *See also State v. Stukes*, 416 S.C. 493, 498, 787 S.E.2d 480, 482 (2016) (holding a jury charge "that a victim's testimony need not be corroborated with additional evidence" was an impermissible charge on the facts although an accurate statement of section 16-3-657 (S.C. Code Ann. § 16-3-657 (2015))).

[6] I agree with the majority and would stop short of adopting a *per se* rule of reversible error as Pennsylvania has done, but would hold that the far better practice—particularly in light of this Court's recent jurisprudence in the area of bolstering child witnesses—is for the competency hearing and the court's ruling to be outside the jury's presence. *See State v. Anderson*, 413 S.C. 212, 220-21, 776 S.E.2d 76, 80-81 (2015) (holding "testimony of the factors that are relevant to the trial court's determination whether the interviewee's statement is trustworthy is not appropriate for the jury" because it is improper bolstering of a minor's credibility); *State v. Kromah*, 401 S.C. 340, 359-60, 737 S.E.2d 490, 500-01 (2013) (setting forth examples of statements to which the forensic interviewer may or may not properly testify). *See also Briggs v. State*, 421 S.C. 316, 328-29, 806 S.E.2d 713, 720 (2017)

Moreover, I cannot agree that these errors were harmless beyond a reasonable doubt. *See State v. Jenkins*, 412 S.C. 643, 651, 773 S.E.2d 906, 910 (2015) (citing *State v. Bryant*, 369 S.C. 511, 518, 633 S.E.2d 152, 156 (2006)) ("An error is harmless if it did not reasonably affect the result of the trial."); *State v. Mitchell*, 286 S.C. 572, 573, 336 S.E.2d 150, 151 (1985) ("Whether an error is harmless depends on the *circumstances* of the particular case….[T]he materiality and prejudicial character of the error must be determined from its relationship to the entire case.") (emphasis added). Like the majority, I do not view the evidence against Appellant as overwhelming; however, unlike the majority, I cannot say that these errors were cured by the judge's charge to the jury.

Although not objected to by Appellant or the subject of an assignment of error before us, the State argued that the charge cleansed any potential error stemming from the competency hearing. In my view, this charge came perilously close to a charge on the facts, and were the issue before us, we might very well hold the charge erroneous under our recent jurisprudence. *See* S.C. Const. art. V, § 21; *Pantovich v. State*, 427 S.C. 555, 562, 832 S.E.2d 596, 600 (2019) ("The modern trend, however, has cast doubt upon the validity of charges instructing juries on how to interpret and use evidence."); *State v. Cartwright*, 425 S.C. 81, 93, 819 S.E.2d 756, 762 (2018) (stating "the trial court shall not provide a limiting instruction or otherwise comment to the jury on" suicide-attempt evidence because such a charge may be an improper charge on the facts); *State v. Belcher*, 385 S.C. 597, 600, 685 S.E.2d 802, 803-04 (2009) (requiring limitations to a jury charge allowing malice to be inferred from use of a deadly weapon), *overruled in part by State v. Burdette*, 427 S.C. 490, 503, 832 S.E.2d 575, 582 (2019) (holding "regardless of the evidence presented at trial, a trial court shall not instruct the jury that it may infer the existence of malice when the deed was done with a deadly weapon"). Therefore, I am unpersuaded that this arguably erroneous charge cured the error by the State in questioning Minor in the first person and the trial court's error in holding a competency hearing and ruling on Minor's competency in front of the jury. I firmly believe that these two errors

---

(holding a forensic interviewer "invaded the province of the jury" when she testified she had made a determination that the child victim was telling the truth and that the child understood the difference between truth and lies); *State v. Chavis*, 412 S.C. 101, 108-09, 771 S.E.2d 336, 340 (2015) (finding a forensic interviewer's testimony recommending that the victim stay away from the appellant improperly bolstered the victim's credibility).

prejudiced Appellant and denied him a fair trial.  Accordingly, I would reverse and remand for a new trial.

**BEATTY, C.J., concurs.**