INTERSTATE COMMERCE COMMIS-
SION, Plaintiff,

v.

Joseph Ulmer MOORE
and
Lykes Bros., Inc., a Corporation,
Defendants.

Civ. A. No. 63–149.

United States District Court
M. D. Florida,
Tampa Division.

Feb. 20, 1964.

———◆———

Arthur F. Bronczyk, Atlanta, Ga., for plaintiff.

J. Danforth Browne, of Macfarlane, Ferguson, Allison & Kelly, Tampa, Fla., for defendants.

WHAM, District Judge.

This cause having come on for trial by the Court, Arthur F. Bronczyk, Attorney for Plaintiff, Interstate Commerce Commission, and J. Danforth Browne of MacFarlane, Ferguson, Allison & Kelly, Attorneys for Defendants, the Court has considered the complaint of the Plaintiff, answer by Defendants, the evidence educed at the trial and the arguments of counsel, and has arrived at Findings of Fact and Conclusions of Law as follows:

## Findings of Fact

### I.

This is a suit brought by the Interstate Commerce Commission under the provisions of Sections 204(a) (6) and 222(b) of Part II of the Interstate Commerce Act (49 U.S.Code, §§ 304(a) (6) and 322 (b)) and Section 2 of the Elkins Act (49 U.S.Code, § 42) and under the general laws and rules relative to suits in equity arising under the Constitution and laws of the United States. The plaintiff seeks permanently to enjoin defendant Joseph Ulmer Moore from transporting the property of defendant Lykes Bros., Inc., by motor vehicle in interstate commerce on public highways for compensation as a common and contract carrier until such time, if at all, as there is in force with respect to said defendant the necessary operating authority issued by the Commission authorizing such transportation and operations, and further seeks permanently to enjoin defendant, Lykes Bros., Inc., from in any manner directly or indirectly engaging or employing said Joseph Ulmer Moore or such other carriers in the transportation of its property in interstate commerce by motor vehicle on public highways, for compensation, unless and until such time as here is in force with respect to said Joseph Ulmer Moore and such other carriers the necessary operating authority issued by the Commission.

### II.

Defendant, Joseph Ulmer Moore, has his principal place of business in Tampa, Florida. He was and is engaged in the transportation of property in interstate commerce by motor vehicle on public highways, between points in the States of Florida, Indiana, Missouri, Nebraska and Minnesota, and other states, for defendant Lykes Bros., Inc.

### III.

Defendant, Joseph Ulmer Moore, was and is operating in the Middle District of Florida, and within the jurisdiction of this Court. He holds no operating authority of any kind whatsoever from the Commission.

### IV.

Defendant, Lykes Bros., Inc., was and is a duly organized Florida corporation, engaged in the purchasing, processing and selling of meat, with its principal place of business in this respect at Tampa, Florida. Lykes Bros., Inc., has been and is using, employing, aiding and assisting the motor carrier operations and services of defendant, Joseph Ulmer Moore.

### V.

The evidence and proof educed during the trial of this case was clear with respect to the circumstances surrounding the transportation activities in question. Defendant, Joseph Ulmer Moore, and defendant, Lykes Bros., Inc., have entered into current lease of equipment arrangements pertaining to all the motor vehicle equipment, namely, truck tractors, of defendant, Joseph Ulmer Moore, covering the period of this suit, whereby defendant, Joseph Ulmer Moore, purports to lease all his truck tractors to defendant, Lykes Bros., Inc., to be used in transporting said company's products in intrastate and interstate commerce. The trailer units in which said products were contained were furnished by Lykes Bros., Inc.

By the terms of the lease utilized by these defendants, compensation is to be paid defendant, Joseph Ulmer Moore, for the use of each tractor at the rate of fourteen (14) cents per running mile. By a "Supplement To Long Haul Lease Agreement", dated March 20, 1961, the

defendants further agreed to the payment of fifteen (15) cents per mile "payable only when the rig hauls its agreed weight of 35,000 pound capacity." The leasing provisions further explicitly provide that the lessee guarantees the lessor that the vehicles will be operated a minimum of five thousand (5000) miles per month provided the vehicles were "in usable condition at least three (3) full weeks out of said month"; defendant, Joseph Ulmer Moore, agrees to furnish all fuel, oil and lubricants, tires, tubes, and all other operating supplies and accessories necessary for the proper and efficient operation of such vehicle, to maintain such vehicle in sound and safe operating condition so as to comply with all safety rules and regulations of the Interstate Commerce Commission, and to provide all license plates and vehicles taxes. The leasing provisions further explicitly provide that the vehicles "shall be under the sole and exclusive direction and control of Lessee * * *." and that the lessee, defendant, Lykes Bros., Inc., shall furnish its own drivers and helpers as its own employees. Defendant, Lykes Bros., Inc., further assumes full responsibility for the operation of the purportedly leased vehicles "to the public, shipper and the regulatory bodies having jurisdiction over such matters" and agrees to furnish public liability and cargo insurance. Lessee, Lykes Bros., Inc., further agrees that, upon receiving any written complaint from defendant, Joseph Ulmer Moore, specifying any reckless or abusive handling of the vehicles or any other incompetency by any driver, it will cause such driver to be removed.

## VI.

In substance the actual operations surrounding the transportation activities and arrangements between the defendants herein did not comply with the provisions of the aforesaid lease. The lessor-defendant, Joseph Ulmer Moore, did in fact exercise a very substantial control of the operation of the trucks in addition to assuming a substantial amount of the characteristic burdens of the transportation business. Control over the instant operations was exercised by defendant, Joseph Ulmer Moore, especially through his employment of Mrs. Julia Smith. Here the proof is undisputed that Mr. Moore paid Mrs. Smith $65.00 a week and currently pays her $75.00 a week, while defendant, Lykes Bros., Inc., has continued to pay her only $25 per month, purportedly as the dispatcher of Lykes Bros. She has no duties with respect to any motor vehicle equipment other than equipment owned by defendant, Moore, and purportedly leased by defendant, Moore, to Lykes Bros., Inc. Mrs. Smith testified that the majority of her work had to do with the dispatching of vehicles purportedly leased by Mr. Moore to Lykes Bros., Inc. This leads me to the conclusion that Mr. Moore was the employer and master of Mrs. Smith and had a great deal to do with the dispatching work herein.

The method of operation evidenced in this case will more graphically describe the very substantial control exercised by defendant, Joseph Ulmer Moore, over the trucks purportedly leased by him to defendant, Lykes Bros., Inc., and over the drivers of said trucks. The hiring operations involving said drivers, with the exception of the medical examinations conducted by personnel of Lykes Bros., Inc., are conducted by his employee, Mrs. Julia Smith, who is located in the offices of defendant, Moore. Not only does Mrs. Smith handle the details of employing said drivers but she also arranges for their discharge from employment as it becomes necessary. The drivers report to Mrs. Smith at the beginning of each trip, having originally been assigned to particular vehicles by defendant Moore, himself. Mrs. Smith arranges with various brokers of agricultural commodities for the outbound or northbound transportation of said commodities for the account of Lykes Bros., Inc., and instructs the drivers concerning the transportation handling of said shipments. Mrs. Smith then informs Lykes Bros., Inc., of the departure of the driver and

motor vehicle equipment, the destination and estimated arrival time of these shipments. Lykes Bros., Inc., then arranges to purchase meat near the destination area and advises Mrs. Smith of any such purchases. The drivers, after delivering the agricultural commodities, contact Mrs. Smith for further instructions concerning the pick-up of any meat for Lykes Bros., Inc. Such meat is then transported back to Lykes Bros., Inc., in Florida. The drivers then report back to Mrs. Smith. At this time, they account for the monies advanced to them by defendant, Moore, at the beginning of the trip. These monies are used for any and all expenses incurred by the drivers during the course of the aforesaid transportation, including the drivers personal expenses. Any expenses involving the trailer equipment of Lykes Bros., Inc., is eventually borne by Lykes Bros., Inc. All salary checks are issued payable to the drivers by Lykes Bros., Inc., but are received by Mrs. Julia Smith and delivered to defendant, Moore, who negotiates them by endorsing the drivers' names thereon in accordance with powers of attorney from all the said drivers. Mr. Moore then issues another check to a given driver after deducting from the original salary check any portion of the monies advanced the driver by Mr. Moore as aforesaid for which the driver could not properly account.

The drivers' daily logs are maintained by Mrs. Smith. Whatever instructions the drivers involved in the instant operations receive in relation to compliance with the Commission's Motor Carrier Safety Regulations are given by Mrs. Smith.

### VII.

The truck tractors purportedly leased by defendant, Joseph Ulmer Moore, to defendant, Lykes Bros., Inc., are maintained and stored, when not in actual usage by Lykes Bros., Inc., on premises leased by Mr. Moore from Lykes Bros., Inc., adjacent to Mr. Moore's offices. Garage facilities are also located on these premises where mechanics employed by Mr. Moore maintain and repair said vehicles. While there is not total compliance with the Commission's safety regulations with respect to these vehicles, all records and reports in connection therewith are maintained by Mr. Moore.

### VIII.

Defendant, Joseph Ulmer Moore, is exclusively engaged in furnishing the aforesaid transportation services to defendant, Lykes Bros., Inc. He engages in no other business activities. He purports, as aforesaid, to lease all of his motor vehicles, namely, truck tractors, to defendant, Lykes Bros., Inc.

### IX.

Defendant, Joseph Ulmer Moore, assumes the following burdens and expenses, in connection with the instant operations: all license plates and vehicle taxes; fuel, oil, lubricants, tires, tubes, and all other operating supplies and accessories necessary for the operation of the vehicles here involved; maintenance and repair of said vehicles, including the cost of substituting equipment in the event certain equipment breaks down during the course of a given trip; and the cost of insurance covering said equipment.

### X.

From the whole record it is clear that the transportation operations herein were in substance actually those of defendant, Joseph Ulmer Moore. The operations as actually carried out clearly establish that defendant, Moore, occupies the position of a contract carrier of property by motor vehicle in interstate commerce with respect to defendant, Lykes Bros., Inc., which latter defendant occupies the position of a shipper with respect to Mr. Moore.

### XI.

Defendant, Joseph Ulmer Moore, does not hold a permit or any other operating authority from the Interstate Commerce Commission authorizing him to engage in the business of a contract, common or for-hire carrier of property by motor vehicle in interstate or foreign commerce.

## XII.

Defendant, Joseph Ulmer Moore, intends to and unless restrained will continue to operate as he has heretofore operated under the aforesaid arrangements, without first obtaining from the Interstate Commerce Commission a permit or any other necessary authority authorizing him to operate as a contract carrier, and defendant, Lykes Bros., Inc., intends to and will, unless restrained, continue to utilize the facilities and services of defendant, Joseph Ulmer Moore as aforesaid.

### Conclusions of Law

#### I.

■ This Court has jurisdiction of the subject matter and of the defendants, Joseph Ulmer Moore and Lykes Bros., Inc., under and by virtue of the provisions of Part II of the Interstate Commerce Act, 49 U.S.Code § 301 et seq., and particularly under Section 222(b) thereof, 49 U.S.Code § 322(b), and under Section 2 of the Elkins Act, 49 U.S.Code § 42, and under the general laws and rules relative to suits in equity, and this suit was properly so brought.

#### II.

Defendant, Joseph Ulmer Moore, has controlled and dominated the described operations and assumed a very substantial share of the characteristic burdens of the transportation business in connection with said operations, including the trucks and truck drivers, and has thus provided defendant, Lykes Bros., Inc., a complete transportation service, all without there having been issued appropriate operating authority therefor from the Interstate Commerce Commission.

#### III.

Defendant, Lykes Bros., Inc., has actively participated in aiding and abetting Joseph Ulmer Moore in the performance of said unauthorized operations.

#### IV.

The leasing arrangements entered into by the defendants were departed from in practice as indicated in the findings of fact by both parties and the *de facto* operations constituted Joseph Ulmer Moore a contract carrier in interstate commerce for Lykes Bros., Inc., under 49 U.S.Code § 303(a) (15). Under the provisions of 49 U.S.Code § 309 Mr. Moore was obliged to have a permit issued by the Interstate Commerce Commission to authorize him to operate as such contract carrier.

#### V.

The United States Supreme Court, in United States v. Drum et al., 368 U.S. 370, 82 S.Ct. 408, 7 L.Ed.2d 360, ruled that the Commission has correctly held from the outset of its decisions that a purported private carrier who hires the instrumentalities of transportation from another must, if he is not to utilize a carrier authorized by the Commission to engage in the respective transportation, assume in significant measure the characteristic burdens of the transportation business.

The Supreme Court in the Drum decision adopted the Commission's "test of substance" in dealing with cases of this type. The Court explicitly recognized therein that, under the scrutiny of that test, some indicia of private carriage might be assumed even along with detailed surveillance of the transportation operations undertaken, without a shipper's having significantly shouldered the burdens of transportation. The Court cited a number of court decisions, concerning leased equipment cases, which also reviewed the respective factual situations involved in terms of the over-all substance of the operations rather than simply in terms of "control". The principles applied by the courts in those decisions are applicable here. See particularly Georgia Truck System, Inc. v. I. C. C., 5 Cir., 123 F.2d 210, 212; I. C. C. v. Isner, D.C., 92 F.Supp. 582; United States v. La Tuff Transfer Service, D.C., 95 F.Supp. 375; and I. C. C. v. Werner, D.C., 106 F.Supp. 497.

■ The Supreme Court in the Drum case, in effect, adopted two tests utilized by the Commission. These tests

or inquiries *both* must be satisfied before the transportation activities in question can be held to constitute private carriage as defined by Section 203(a) (17) of the Interstate Commerce Act, 49 U.S.Code § 303(a) (17). First, it must be found that "no person" other than the shipper had "any right to control, direct and dominate" the transportation. Second, it must also be found that no person "in substance" was engaged in the business of transporting property for hire. This latter test of substance supplements the first test of control to such an extent, as the Supreme Court stated, that even "a finding of shipper control does not require a resolution of the ultimate issue in the shipper's favor." As the Court pointed out, the Commission decisions have always clearly indicated that the vesting of physical "control" in the shipper-lessee would not in itself suffice to render the transportation private carriage.

It is clear that the principles enunciated and adopted by the Supreme Court in the Drum case, as applied by the courts and the Interstate Commerce Commission, are applicable here under the facts shown by the evidence so as to require that a permanent injunction be granted as prayed for in the complaint against defendants Joseph Ulmer Moore and Lykes Bros., Inc. Indeed, not only is it evident that the leasor, Mr. Moore, exercises very substantial control over the operations of the trucks and drivers but it is equally evident that the lessor, Mr. Moore, also assumes substantial and significant burdens characteristic of the transportation business.

## VI.

The acts of both defendants, Joseph Ulmer Moore and Lykes Bros., Inc., and each of them, constitute violations of the provisions of Sections 206(a) and 209(a) of the Interstate Commerce Act, 49 U.S. Code §§ 306(a) and 309(a), and as such are subject to be enjoined by this court under Section 222(b) of said Act, 49 U.S.Code § 322(b) and under Section 2 of the Elkins Act, 49 U.S.Code § 42.

The permanent injunction as prayed for in the complaint of plaintiff is hereby entered accordingly.

## PERMANENT INJUNCTION

It appearing, that this cause having come on for trial at Tampa, Florida, Arthur F. Bronczyk, Attorney, Interstate Commerce Commission, and J. Danforth Browne, of Macfarlane, Ferguson, Allison & Kelly, for defendants, the Court having duly considered the pleadings of plaintiff and defendants, testimony of witnesses, and all the evidence educed at the trial, and having entered its findings of fact and conclusions of law herein, in accordance therewith:

It is therefore ordered, adjudged and decreed, that the defendant, Joseph Ulmer Moore, his agents, employees, representatives, and all others acting by or under his direction or authority and all persons in active concert or participation with him be perpetually and permanently enjoined and restrained from in any manner or by any device directly or indirectly transporting or holding themselves out to transport property in interstate commerce by motor vehicle, for compensation, on public highways as a common or contract carrier by motor vehicle, unless and until such time, if at all, as there is in force with respect to said Joseph Ulmer Moore a certificate of public convenience and necessity or a permit issued by the Interstate Commerce Commission authorizing such particular transportation and operations;

Further, it is ordered, adjudged and decreed, that defendant, Lykes Bros., Inc., a corporation, its agents, employees, representatives, and all other persons in active concert or participation with them be perpetually enjoined and restrained from in any manner directly or indirectly engaging or employing said Joseph Ulmer Moore or such other carriers in the transportation of property in interstate commerce by motor vehicle on public highways, for compensation, unless and until such time, if at all, as there is in force with respect to said Joseph Ulmer Moore and such other carriers a certificate of

public convenience and necessity or a permit issued by the Interstate Commerce Commission authorizing such particular transportation and operations;

Finally, it is ordered, adjudged and decreed, that plaintiff have its costs in this behalf incurred.