**PROFESSIONAL DRIVER SERVICES, INC., Plaintiff,**

v.

**INTERSTATE COMMERCE COMMIS- SION and United States of America, Defendants.**

**Civ. A. No. 7053.**

United States District Court, M. D. Tennessee, Nashville Division.

March 8, 1974.

Maxwell A. Howell, Washington, D. C., Walter Harwood, Robert L. Baker, Nashville, Tenn., for plaintiff.

James F. Tao, James K. Kurth, I. C. C., Washington, D. C., Charles H. Anderson, U. S. Atty., Nashville, Tenn., for defendants.

James Clarence Evans, Nashville, Tenn., Albert F. Beasley, Washington, D. C., for intervenors Dallas & Mavis Forwarding Co., Dealers Transit, Inc., Insured Transporters, Inc., Kenosha Auto Transport Corp. and Howard Sober, Inc.

James Clarence Evans, Nashville, Tenn., K. Edward Wolcott, Atlanta, Ga., for intervenor Motor Convoy, Inc.

James Clarence Evans, Nashville, Tenn., Eugene C. Ewald, Detroit, Mich., for intervenors Automobile Transport, Inc. and National Automobile Transporters Assn.

Before PHILLIPS, Circuit Judge, GRAY, Chief Judge, and MORTON, District Judge.

PER CURIAM.

This is an action to review an order of the Interstate Commerce Commission (ICC) entered August 9, 1972, in the case of Professional Driver Services, Inc., Common Carrier Application, No. MC–135812. The ICC's order denied plaintiff's motion to dismiss its application for a certificate of convenience and necessity filed pursuant to 49 U.S.C. § 307, and denied the application.

Plaintiff is a Tennessee corporation organized in 1969. Its president and controlling stockholder is Boyd Adams, who individually, and subsequently in the name of Drive-U-Service, Inc., has held authority to perform various classifications of automobile driveaway service between the Nashville area and points in the United States for approximately eight years. Professional Driver Services, Inc. (and Boyd Adams individually) has been performing driveaway transportation of trucks, chassis and tractors for more than ten years. Plaintiff has never been certified by the ICC, and in 1971 was notified that its operation was thereby in violation of the Interstate Commerce Act.

By application filed July 6, 1971, plaintiff, Professional Driver Services, Inc. of Nashville, Tennessee, sought a certificate of public convenience and necessity authorizing operation as a common carrier by motor vehicle, in interstate and foreign commerce, over irregular routes, of trucks, tractors, semitrailers, and tractor trailer units, in *driveaway service*, between Nashville and Knoxville, Tennessee, and Mobile, Alabama, on the one hand, and, on the other, points in the United States (excluding Alaska and Hawaii) restricted against the performance of initial movements to Nashville, Knoxville, and Mobile. By motion contemporaneously filed, applicant sought dismissal of the application on the ground that the proposed service is not such as to require authority from the Commission.

The Commission held, in substance, (1) that the applicant was performing for-hire-carriage and therefore required a certificate of convenience and necessity; (2) that because the applicant had been acting without such certificate it was unfit to perform the sought service; and (3) that the applicant did not show that public convenience and necessity required the proposed operation.

Professional Driver Services employs drivers qualified and licensed to operate heavy and light trucks and furnishes these drivers to customers needing to

transport a particular unit or units of equipment (1) from yards adjacent to manufacturers of the equipment to any of the three involved cities (which movements applicant believes to be secondary); (2) between equipment dealers in any of the cities and other equipment dealers; (3) between equipment dealers in the cities and body modification fabricators; and (4) miscellaneous movements including those from dealers to customers, or for equipment owners to points they wish equipment transported.

Plaintiff's customers are primarily heavy truck retailers, many of whom at one time employed their own drivers. However, for economic and other reasons, this practice was discontinued and the plaintiff's services utilized. Trucks are transported under their own power and are not placed on flatbeds or other types of trailers.

Plaintiff employs drivers in accordance with its own qualification criteria, and drivers are subject to its supervision and discipline. Drivers are paid on a mileage rate, and plaintiff makes the withholding deductions for federal income tax and social security payments. Plaintiff bears the expense of transporting drivers to pickup locations by bus, or at bus fare rates, but the customer may elect to pay the difference in fares and have a driver brought in by quicker modes of travel. The driver pays for his own meals with plaintiff paying for overnight accommodations except for layovers caused by customer delays. The customer pays for gasoline, toll charges, insurance on trucks being transported, and runs the risk of damage to a truck while en route. The customer has control of the driver's duties, and may issue instructions to be followed on the particular job; the customer also may refuse to accept a driver furnished by plaintiff. Normally, a particular driver works for a customer for only a few hours up to two or three days; occasionally, one driver will be retained by a customer for as long as a week or two.

A certificate of public convenience and necessity issued by the ICC is a prerequisite to operation as a common carrier by motor vehicle. 49 U.S.C. §§ 306(a)(1), 307(a). A common carrier by motor vehicle is defined by 49 U.S.C. § 303(a)(14) as being "any person which holds itself out to the general public to engage in the transportation by motor vehicle in interstate or foreign commerce of passengers or property or any class or classes thereof for compensation, whether over regular or irregular routes . . . ." A contract carrier by motor vehicle is defined in 49 U.S.C. § 303(a)(15).

In essence, plaintiff contends that its driveaway service constitutes private carriage as defined by 49 U.S.C. § 303(a)(17) and is therefore not subject to regulation. However, this section was designed explicitly to authorize the ICC to eliminate transportation which, though carried on in the guise of private carriage, was in effect for-hire carriage, and thus might lawfully be carried on only by an authorized common or contract carrier. Red Ball Motor Freight v. Shannon, 377 U.S. 311, 84 S.Ct. 1260, 12 L.Ed.2d 341 (1964).

The ICC makes two primary inquiries which must be satisfied before an operation in question is held to constitute private carriage: (1) that no person other than the owner had "any right to control, direct and dominate" the transportation; and (2) that "no person before the Commission was in substance engaged in the business of . . . transportation of property . . . for hire." United States v. Drum, 368 U.S. 370, 381, 82 S.Ct. 408, 413, 7 L.Ed.2d 360 (1962). In other words, has the shipper significantly shouldered the burdens of transportation?

The Supreme Court has characterized driveaway service as a "method of transportation . . . performed by individual driving of the vehicle under its own power, by driving one vehicle under its own power and towing a sec-

ond vehicle attached to the first, or by driving under its own power a vehicle upon which another vehicle is partially or wholly mounted." Alton R. Co. v. United States, 315 U.S. 15, 17, 62 S. Ct. 432, 434, 86 L.Ed. 586 (1942).

■ The driveaway service arrangement for new automobiles has been the subject of considerable litigation under various factual allegations dealing with the aspect of control. Orleman v. United States, 219 F.Supp. 945 (E.D.Mich. 1963) (three-judge court); ICC v. AAA Con Drivers Exchange, Inc., 340 F.2d 820 (2d Cir. 1965); Spencer v. United States, 236 F.Supp. 230 (N.D.Ohio 1964); Studna v. United States, 225 F. Supp. 973 (W.D.Mo.1964), and the numerous cases cited therein. The operators in each of these cases furnished drivers under factual circumstances similar to those in the instant case, and each was held subject to the Act. The only essential difference between the driveaway automobile cases and the instant case is the comparative value of automobiles as contrasted to that of heavy trucks. Plaintiff asserts this difference as a means of distinguishing its operation from those of the automobile driveaway services found to require certification. However, factual distinctions alone are not dispositive, and

" . . . the question is not whether [one] operation is different from [another], but whether it is so different as to require the Commission to treat it differently. 'We deal in totalities; indicia are instruments of decision, not touchstones,' United States v. Drum, supra, 368 U.S. at 384, 82 S.Ct. at 415." ICC v. AAA Con Drivers Exchange, Inc., supra, at 826.

■■ How much emphasis to place on each of the indicia is within the province of the hearing body after seeing and listening to the witnesses. In this case the Commission's initial finding that plaintiff's drivers were not within the exclusive control of its customers had a rational basis and was supported by substantial evidence. There-

fore, we will not disturb the Commission's decision in this regard.

Passing now to the second test of an operation, the Commission found that the owners of vehicles transported by plaintiff had not significantly shouldered the burden of transportation.

The service provided by plaintiff differs from a driveaway service in which the customer's product is shipped aboard trucks which must be owned or leased by the customer; in the plaintiff's operation, the product moving in commerce is the truck itself. In the former situation, a substantial portion of the customer's burden of transportation is the truck investment or the lease expense. However, this expense is nonexistent in the relationship between plaintiff and its customers, and the remaining incidents of transportation are fairly evenly divided. Plaintiff selects the drivers, determines their qualifications, makes them available to the customer, transports them to the place of pickup, pays for motel accommodations along the road when the layover is not due to the customer's delay, and requires its drivers to furnish their own meals. On the other hand, the owner pays for the gasoline, road tolls, carries insurance, and instructs the driver in the event of unexpected circumstances during the trip.

In this division of responsibilities, one significant burden of transportation, the risk of financial loss through truck damages, is borne by plaintiff's customers. The following language from United States v. Drum, supra, is pertinent in this regard.

"It is evident that the Commission here refused to allow Oklahoma the status of a private carrier because of its belief that financial risks are a significant burden of transportation, and its belief that such risks had been shifted by Oklahoma to the owner-operators to an extent which rendered the sanctioning of the operation as private carriage a departure from the statutory design. We think that such conclusions were well within the range

of the responsibility Congress assigned to the Commission . . . . If the court intended to hold that the Commission is confined to the 'control' test, we think it clearly in error in view of the statutory objectives which we have set forth above. If, on the other hand, the court meant to substitute its judgment for the Commission's on the question of substance, we think that, on this record, it indulged in an unwarranted incursion into the administrative domain." United States v. Drum, *supra*, at 385, 386.

Respecting the Commission's authority to exercise its judgment and expertise in determining whether the owner of the equipment involved in the instant case assumed a significant burden of transportation, and in view of the numerous cases in automobile driveaway operations decided adverse to plaintiff's position in this case, we hold that the decision of the Commission was rational and supported by substantial evidence. We therefore also refuse to disturb that portion of the holding.

We further find, however, that the Commission's decision that plaintiff is unfit to perform the service applied for was arbitrary and unsupported by substantial evidence.

The Commission apparently based this decision in large part on the fact that plaintiff's president had known since 1963 that driveaway services for automobiles required authorization from the Commission. Therefore, it was found unreasonable for plaintiff to believe that similar authority would not be necessary in a driveaway service for heavy equipment. The Commission found that the attitude of the president in his continued insistence that transportation of new trucks and chassis is a secondary service as distinguished from an initial service was further evidence of his unfitness. In addition, the Commission considered as indicative of an overall "cavalier" attitude the fact that plaintiff's application did not seek authority to transport chassis, although since 1952 it has been clear that chassis consisting of power plant, frame, wheels, braking devices and mechanisms for the transmission of its power plant, and other accessories, exist only to become a part of a complete motor vehicle, and until it is a complete motor vehicle it cannot be a truck even if the chassis is denominated a "truck chassis." Kenosha Auto Transport Corp. Extension—Union City, Ind., 54 M.C.C. 689, 693.

On the other hand, no derogatory proof was introduced concerning the business activities of plaintiff, plaintiff's president, or the companion business owned by him (Drive-U-Service, Inc.). No evidence was introduced which would show any business deficiency, moral or character deficiency, or failure to satisfactorily perform service in plaintiff's operation.

At the hearing of this cause, the attorneys for all parties tacitly, if not actually, admitted that the law in cases of this type has been in a state of flux. To a very great extent, each decision turns upon factual circumstances peculiar to each case. Of particular interest are the decisions of the Commission in Personnel Services, Inc.—Investigation of Operation and Practices, 110 M.C.C. 695 (1969), upheld in National Motor Freight Traffic Assn., Inc. v. United States, Civil No. 339–71 (D.D.C., June 27, 1972), and Ontario Company—Declaratory Order, 112 M.C.C. 211 (1970), upheld in National Motor Freight Traffic Assn., Inc. v. United States, Civil No. 480–71 (D.D.C., April 25, 1973).

As stated by the court in the case of Interstate Commerce Commission v. AAA Con Drivers Exchange, Inc., *supra*,

"But none of this settled doctrine decides whether or not a particular 'driveaway' operation is a 'for hire transportation business by motor vehicle' within § 203(c) or common carriage by motor vehicle within § 206(a)(1)." *Id.* at 824.

█ The uncertainty surrounding the certification requirement in operations of this type certainly militates against deciding that an applicant who has con-

ducted past operations without a certificate, believing none was necessary, is thereby unfit to perform a driveaway service. We specifically hold that there is no legal or factual basis for this determination by the Commission in the instant case.

■ The final portion of the Commission's order ruled that plaintiff had failed to demonstrate that the service sought would be responsive to a valid public need. More specifically, the Commission, adopting the finding of the administrative law judge, found it impossible to isolate an existing public convenience and necessity within the scope of plaintiff's application. We believe that the record was sufficient to enable the Commission to make a specific determination in this regard. It is therefore necessary to remand this case to the Commission with instructions to vacate its finding of unfitness and to make a specific finding as to public convenience and necessity.

An appropriate order will be prepared by the attorneys for the plaintiff and submitted to the court within ten (10) days.