875 F.2d 866
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Tammy PIERCE, personal representative of the estate of John
Henry Pierce, deceased, Plaintiff-Appellant,
v.
CUB CADET CORPORATION, Defendant-Appellee.
 No. 87-5936.
 United States Court of Appeals, Sixth Circuit.
 May 9, 1989.
 
 Before KENNEDY and WELLFORD, Circuit Judges, and HERMAN J. WEBER*, District Judge.
 PER CURIAM.
 
 
 1
 Tammy Pierce as personal representative of her father, John Henry Pierce, appeals the entry by the district court of a directed verdict for Cub Cadet Corporation (CCC) in this wrongful death action based upon diversity jurisdiction. While driving a truck loaded with materials being shipped by appellee CCC, Pierce was killed by incineration when his truck ran off the road, crashed into an embankment, and caught fire. Pierce was trapped in the truck's cab by his cargo, which had crashed through the front wall of the truck's trailer and come into the cab.
 
 
 2
 Pierce was employed by Decker Transportation, a trucking company, and on April 10, 1985, he was carrying a trailerload of metal parts manufactured by CCC from its Tennessee facility through Kentucky to an Ohio destination. The approximately 41,000 pounds of cargo was loaded by CCC employees under the supervision of its traffic manager Oates, who signed the loading manifest as shipper and consigner. Although Oates did not recall the specific load at issue, he testified regarding CCC's current standard loading procedure. He testified that, as loaded, there would customarily be a four and one-half inch gap in the middle of the cargo, and a gap between the end of the cargo and the back of the trailer. The cargo was usually loaded flush with the front of the trailer, but was not otherwise braced or blocked. Oates also testified with regard to inspection of the load by the driver, who picks up the trailer after it is loaded. The driver proceeds to CCC's plant gate, where he and a guard jointly conduct an inspection, and then the load is sealed.
 
 
 3
 A Kentucky law enforcement official responded to an emergency call that an accident had occurred, involving Pierce in the Decker Transportation truck. He saw the truck, with smoke coming from it, wrecked against the rock embankment and heard Pierce's screams for help from inside the cab. Both fuel tanks had "ruptured" and the cab was covered with "metal pieces." Clark, the Kentucky official, and bystanders attempted to put out the fire while trying to extricate Pierce from the truck, but were unsuccessful. Clark testified that the fact that the cab of the truck was covered with the cargo "made it difficult for us to try and get to the source where the fire was starting and made it impossible for us to dig down through and get to the gentleman inside the truck."
 
 
 4
 Clark found no skid marks or other evidence to indicate why the truck left the road, traveling a considerable distance before impact. Lew Blankenbaker, called by Pierce as an expert in loading procedures, could not testify that the cargo had shifted before the truck left the roadway, and he too admitted that he did not know what caused the truck to veer off into the rock embankment. John Neal, also called as an expert by appellant, indicated that the cargo would only have shifted laterally after the truck went into the ditch between the road and the rock embankment, but that at that point the shift would have caused Pierce to lose control of the truck rather than being able to pull back onto the road. The district court, however, discounted his testimony in this respect. An Oldham County Fire Department representative, Higdin, was of the opinion that the fire was initially electrical in nature, originating at the truck's floorboard or just above near the seat. The truck in controversy traveled some forty to fifty feet across the face of a rock embankment before it came to a stop, and was ultimately destroyed by the impact and fire.
 
 
 5
 Dr. Barbara Jones conducted an autopsy, and concluded that Pierce's death was attributable to total body incineration. She found no evidence of other injuries, and concluded that Pierce would have survived the accident had he not sustained severe burns from the fire and explosion of the gas tanks.
 
 
 6
 Blankenbaker and Neal testified regarding safety standards for loading in the industry. Pierce contended that CCC had not met those standards. Blankenbaker had been in the trucking industry since 1963, and had undergone specific training or educational programs in the loading and securing of cargo in tractor trailers. He testified that standards of safety for loading applicable to carriers such as Dexter are equally applicable to shippers such as CCC, which undertake to load their own cargo. Despite cross-examination concerning his deposition statements to the contrary, Blankenbaker testified that CCC's method of loading as described by Oates was unsafe, in his opinion, because of lack of restraints and a two-by-four board to secure the cargo in the void at the rear of the trailer.
 
 
 7
 Neal, apparently vice president of safety of a trucking company, also testified that appellee's method of loading was defective because the cargo was not tied down, blocked or braced, nor was the void in the rear filled by a two-by-four or four-by-four board. Because the cargo was not secured, it shifted or "walked" to the rear of the trailer en route. Neal did not have the ability to calculate the energy that would be exerted by the cargo shifting, but was allowed to testify with regard to the "natural effect or natural propensity of a load of cargo that was not tied down ... upon encountering a cliff or ... rapid deceleration" as a matter of common knowledge. Upon impact, Neal testified, the cargo was free to go forward and go through the front of the trailer into the cab. He also testified that the movement of the cargo in the trailer might cause the center of gravity to change, making the truck and trailer an unsafe vehicle.
 
 
 8
 In his deposition, Neal testified that had the cargo been secured at the rear, there was a "good possibility" that this cargo would not have come through into the cab, and had it come through, the whole front wall of the trailer would not have come down and the damage would not have been as extensive. At trial, however, Neal testified that had the load been properly secured, it probably would not have shifted as it did.
 
 
 9
 Following presentation of plaintiff's proof, CCC moved for a directed verdict. The district court granted a directed verdict because there was "no evidence that [the cargo] wouldn't have come through, had it been properly anchored," and therefore appellant had failed to present a prima facie evidence that any negligence on CCC's part caused Pierce's death.
 
 
 10
 I. Whether Federal Motor Carrier Safety Regulations Apply to CCC.
 
 
 11
 Pierce contends that the district court erroneously ruled that federal motor carrier safety regulations, 49 C.F.R. Parts 390 through 397, do not apply to shippers such as CCC. As specified in 49 C.F.R. Sec. 390.33, the regulations at issue apply only to "common carriers, contract carriers, and private carriers of property," and provide rules for the securement, blocking and bracing of cargo to prevent shifting and falling. Pierce contends that CCC falls within the definition of "private carrier" of property set forth in 49 C.F.R. Sec. 390.33(b):
 
 
 12
 The term "private carrier of property by motor vehicle" is defined in section 203(a)(17) of the Interstate Commerce Act as any person not included in the terms "common carrier by motor vehicle" or "contract carrier by motor vehicle", who or which transports in interstate or foreign commerce by motor vehicle property of which such person is the owner, lessee, or bailee, when such transportation is for the purpose of sale, lease, rent, or bailment, or in furtherance of any commercial enterprise.
 
 
 13
 CCC, on the other hand, maintains that it is a shipper, and not a carrier within the meaning of these regulations, and that Pierce's employer, Decker Transportation, was the motor carrier subject to these regulations. We find the district court not to have committed error in adopting CCC's contention in this regard, and we affirm.
 
 
 14
 Interpretations of Sec. 203(a)(17) of the Interstate Commerce Act, 49 U.S.C. Sec. 303(a)(17) (current version at 49 U.S.C. Sec. 10102(16)) as incorporated by reference in 49 C.F.R. Sec. 390.33(b) reveal that the term "private carrier" was intended to reach only those shippers that also own or control the means of transportation utilized. No one, then, is a private carrier within the meaning of these regulations who is not engaged in the business of transporting for hire, or, in other words, is not a shipper that significantly shoulders the burden of transportation itself. Professional Driver Services, Inc. v. I.C.C., 376 F.Supp. 536, 538 (M.D.Tenn.1974) (relying upon United States v. Drum, 368 U.S. 370, 381 (1962)). See also Agricultural Transportation Ass'n of Texas v. King, 349 F.2d 873 (5th Cir.1965); I.C.C. v. Moore, 236 F.Supp. 168, 172-73 (M.D.Fla.1964).
 
 
 15
 In this case, Pierce makes no argument that the district court misconstrued CCC's role in the transportation of the cargo in question, nor is there any evidence on this point but that CCC was a shipper an Decker was the carrier. Pierce relies on a misinterpretation of 49 C.F.R. Sec. 390.33. We conclude, as did the district court, that 49 C.F.R. Parts 390 through 397 are inapplicable under these circumstances to CCC.
 
 
 16
 II. Was there evidence upon which the jury could reach a verdict for plaintiff?
 
 
 17
 "The appropriate standard for measuring the sufficiency of the evidence to direct a verdict under Rule 50 of the Federal Rules of Civil Procedure is whether there is evidence upon which the jury could properly support a verdict in favor of the party against whom the motion is made." Patrick v. South Central Bell Tel. Co., 641 F.2d 1192, 1197 (6th Cir.1980). Whether the standard has been met in a particular case is a matter of substantive law, in this case that of Kentucky, the location of the accident. Under Kentucky law, in order for appellant to be entitled to have her case submitted to the jury, "there must be some evidence of probative value" showing "that the appellee was negligent and that this negligence was the proximate cause of [Pierce's] injuries." Hicks v. Fontaine Ferry Enterprises, 247 S.W.2d 493, 495 (Ky.Ct.App.1952).
 
 
 18
 Was there negligence demonstrated on CCC's part for which it should be held liable? Only if and when a shipper assumes the responsibility for loading its property on a motor vehicle, does it have the duty to exercise reasonable care to see that the load is properly secured. "The general rule is that [the shipper] becomes liable for the defects which are latent and concealed and cannot be discerned by ordinary observation by the agents of the carrier; but if the improper loading is apparent, the carrier will be liable notwithstanding the negligence of the shipper." United States v. Savage Truck Line, 209 F.2d 442, 445 (4th Cir.1953);[1] see also Franklin Stainless Corp. v. Marlo Transport Corp., 748 F.2d 865 (4th Cir.1984) (quoting Savage );[2] Blytheville Cotton Oil Co. v. Kurn, 155 F.2d 467, 470 (6th Cir.1946). We locate no Kentucky cases adopting this "shipper exception" to the general rule of carrier liability, but we believe it comports with Kentucky's jurisprudence on negligence and contributory negligence. See, e.g., Carlisle v. Reeves, 294 S.W.2d 74 (Ky.1956). The carrier, Decker, and its agent, Mr. Pierce, had reasonable opportunity to inspect the cargo and the manner of its loading. The lack of special bracing was evident.
 
 
 19
 CCC contends that the only defect identified by Pierce's two experts is the lack of a two-by-four in the void, which would have been visible and obvious to Pierce at the time the trailer was loaded and inspected. CCC therefore argues that this defect, if any, was not latent and concealed, and the responsibility for its consequences rests with Pierce and with Decker, the carrier. Even if we give Pierce the benefit of doubt and indicate that there was sufficient proof for a reasonable jury to conclude that CCC was negligent in the loading process, we must still affirm the judgment for CCC.
 
 
 20
 The dispositive issue was that of causation.[3] The critical question is reflected in the district court's ruling: whether the cargo would have come through the wall of the trailer and trapped Pierce in the cab even if appellee had exercised reasonable care in its securement.
 
 
 21
 Kentucky law requires proof of damages that are the natural and probable consequence of a wrongful act or omission, and which could have been avoided in the absence of such negligent act. Berry v. Jones, 199 S.W.2d 616, 681 (Ky.Ct.App.1947). The negligence must also have been "a substantial factor in bringing about the plaintiff's harm." Deutsch v. Shein, 597 S.W.2d 141, 144 (Ky.1980). "[T]he claimant must introduce sufficient proof to tilt the balance from possibility to probability" in order to "pierce the veil of speculation" so as to survive a motion for directed verdict. Highway Transport Co. v. Daniel Baker Co., 298 S.W.2d 501, 502-03 (Ky.Ct.App.1965).
 
 
 22
 We believe under the totality of the circumstances, despite the testimony of Pierce's experts and reasonable inferences given to such testimony, that it would be mere speculation and surmise for the jury to find that the alleged deficient method of loading the trailer was a substantial factor in causing the tragic death of Mr. Pierce. No expert testimony dealt with the force of the impact based upon the speed of the apparently unbraked vehicle and whether this force would have brought about the unfortunate circumstances of the fire and explosion whether or not the cargo had been braced as suggested by Pierce's experts. Mr. Neal's testimony was to the effect that there would not have been as extensive damage to the front end of the trailer had bracing taken place, as he recommended. This is not a sufficient basis for proximate causation. It was Mr. Blankenbaker's opinion that the federal motor carrier safety regulations were violated and that these regulations were applicable to CCC. As heretofore indicated, we disregard Mr. Blankenbaker's opinion as mistaken in the latter respect.
 
 
 23
 To warrant the submission of a case to the jury there must be some evidence of probative value showing that the negligence of the defendant was the proximate cause of the plaintiff's injuries. A jury cannot be left to speculate as to how an accident occurred.
 
 
 24
 Hicks v. Fontaine Ferry Enterprises, 247 S.W.2d 493, 495 (Ky.Ct.App.1952). See also Texas, Inc. v. Standard, 536 S.W.2d 136, 138 (Ky.Ct.App.1976).
 
 
 25
 In this case, there was insufficient evidence of probative value that the manner of loading was a proximate or substantial contributing factor in the accident and death of Mr. Pierce. We need not discuss the matter of contributory negligence under the circumstances, nor make a determination concerning the alleged negligence of CCC in reaching our decision.
 
 
 26
 Accordingly, we AFFIRM the judgment for defendant appellee CCC.
 
 
 
 *
 THE HONORABLE HERMAN J. WEBER, United States District Court for the Southern District of Ohio, sitting by designation
 
 
 [1]
 Savage indicates this rule "is not only followed in cases arising under the federal statute by decisions of the federal courts, but also, for the most part, by decisions of the state courts." (Citing decisions from a number of jurisdictions.)
 
 
 [2]
 Franklin Stainless holds that "[r]esponsibility for obviously improper loading generally rests on the carrier and it must indemnify the shipper even though the shipper loaded the truck." 748 F.2d at 868
 
 
 [3]
 Appellee contends that appellant has waived the right to challenge the district court's ruling on the issue of causation because she failed to argue the issue in her opening brief, relying upon Wright v. Holbrook, 794 F.2d 1152 (6th Cir.1986). In Wright, the court declined to consider the plaintiff's argument on appeal from a grant of summary judgment to defendant that the district court had committed reversible error by converting the defendant's motion to dismiss to one for summary judgment without notice to plaintiff because the issue was raised for the first time in plaintiff's reply brief. The court noted that "[a]n [appellant's] original brief abandons all points not mentioned therein." 794 F.2d at 157 (quoting Nissho-Iwai Co. v. Occidental Crude Sales, 729 F.2d 1530, 1539 n. 14 (5th Cir.1984). The reason for the rule is to give the appellee an opportunity to respond. CCC was aware of its need to address the issue of causation and did so. We choose to address the merits of the causation question